## ESTATE OF MARY CAWLEY, DECEASED.

APPEAL BY H. B. CAWLEY, FROM THE ORPHANS' COURT OF
UNION COUNTY.

Argued May 12, 1890—Decided October 6, 1890.
[To be reported.]

1. Although a contract and a will are essentially unlike, they may be, and sometimes are combined so as to give a testamentary character to what purports to be a will, or to convert a will into an irrevocable agreement. Whether a given writing is a will or a contract, must be determined from the character of its contents, rather than from its title or formal words.

2. If two or more persons own property in common, there is no objection, on principle, to their joining in a testamentary disposition of it, and this might be called a joint will. Whether, after the death of one or more of the makers, the surviving maker may revoke such a will, as to his title or share of the property devised, not decided.

(a) Brother and sister joined in executing a paper in the following form: "I, B. C., should I be the first to die, and I, M. C., should I be the first to die, give, devise and bequeath, and to the survivor of either of us," all the estate of the decedent, for life, with remainder over. Throughout the paper, except in the clause appointing an executor, the operative words were in the singular number:

3. The instrument was not a contract, in form or effect; nor, there being no joint property or joint devise, was it a joint will. It was properly a double will, and must be construed and treated as the separate will of each maker, as fully as though a separate copy had been executed by each. Wherefore, after the death of one, it was revocable by the other as to his own property.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 94 July Term 1889, Sup. Ct.; court below, number and term not given.

On March 5, 1888, John H. Cawley entered an appeal in the court below from a decree of the register of wills admitting to probate a certain paper dated March 16, 1886, as the will of Mary Cawley, deceased, and granting letters testamentary thereon to Horace B. Cawley, "and from the refusal of the said register, on petition filed and hearing had, to vacate, annul and set aside the admission of said alleged will to probate, and to re-

voke the said letters testamentary." A citation having been awarded and answered, the parties to the appeal took the depositions of witnesses, to be read in evidence upon the hearing thereof.

From the testimony thus taken, and the record of the case, the following facts appeared:

In 1886, Benjamin and Mary Cawley, who were brother and sister, each of advanced age and unmarried, were living together. They had done so for many years. Benjamin was the owner of the house in which they resided, and had a small amount of money. Mary was the owner of $3,000 worth of bank stock. The ownership of the furniture, etc., in the house, was not disclosed by the testimony. On March 16, 1886, they joined in executing the following paper, prepared by Mr. J. Merrill Linn:

"We, Benjamin Cawley and Mary Cawley, brother and sister, of the borough of Lewisburgh, in the county of Union, state of Pennsylvania, being of sound mind and disposing memory, and yet mindful of the uncertainty of life, do make and publish this our last will and testament, hereby revoking any will heretofore made by us, or either of us, and intending to dispose of the whole of our estate, both real and personal.

"First. Upon the death of either of us, the survivor shall pay all the debts of the decedent, so far as the estate of the decedent shall reach to do so, have the decedent properly buried, paying all the expenses of the same, including a tombstone to be placed at the grave.

"Second. I, Benjamin Cawley, should I be the first to die, and I, Mary Cawley, should I be the first to die, give, devise and bequeath, and to the survivor of either of us, all the rest and residue of the decedent's estate, both real and personal, to have and to hold and enjoy the same during the life of the survivor, without impeachment of waste, with leave to use the body of the estate for necessity.

"Third. At the death of the survivor the hereinafter named executor shall pay the debts, funeral expenses, including a tombstone at the grave, of the survivor, and after the payment of the expenses of administration, and to the executor is given power to sell both the real and personal estate, and for that purpose empowered to make all necessary deeds, conveyances and assignments, all the rest and residue of the estate remaining shall be disposed of as follows:

### Statement of Facts.

" The said residue shall be divided into nine parts, three parts thereof I give and bequeath to John Cawley, two parts to Hepburn Cawley, and one part to Horace Cawley, one part to Mary Henson, intermarried with Edward Henson, one part to Ada Gilmore, intermarried with Charles Gilmore, and one part to Emma Harter, intermarried with William Harter, all children of John Cawley, deceased. . . . . [The will here declared certain trusts as to some of the legacies in remainder, the language used being " I declare," " I direct," etc.]

" We hereby make, constitute and appoint Horace C. Cawley to be the executor of this last will and testament ; and direct that letters testamentary be not taken out until the death of the survivor of either of us, but that the survivor shall have and possess and enjoy all the property of which the one dying first shall die seised and possessed of, without let or hinderance, except that it be that the provisions hereinbefore made are not carried out by the survivor, and in such case the executor may take out letters that the same may be fulfilled, but not to invalidate or change the terms of the within bequests and devises, and except it be necessary to establish the title of the survivor.

" In testimony whereof we have severally hereunto set the hand and seals of each of us the 16th day of March, one thousand eight hundred and eighty-six."

On August 12, 1887, Benjamin Cawley died, and on August 22d, the above paper was admitted to probate as his last will. At the time of his death he had on deposit in bank the sum of $300 ; and, as his sister was in need of money for her maintenance and it became necessary to draw this money out of the bank, letters testamentary on his estate were taken out by Horace B. Cawley, who, it was conceded, was the executor named in the will, his name being given therein as Horace C. Cawley, by mistake of the scrivener. The executor drew the money out of the bank and expended it in the payment of Benjamin Cawley's debts and funeral expenses, and in the maintenance of Mary Cawley.

On January 29, 1888, Mary Cawley died, and on February 1, 1888, the register again admitted to probate the paper dated March 16, 1886, this time as the will of Mary Cawley, granting letters testamentary thereon, in her estate, to Horace B. Cawley. Later in the same day, there was presented to the

Opinion of Court below.

register for probate a testamentary paper executed by Mary
Cawley, bearing date September 5, 1887, revoking all prior
wills by her at any time made, making a disposition of her
estate different from that provided for in the paper of March
16, 1886, and appointing John H. Cawley as her executor.
The register took the affidavits of the subscribing witnesses as
to the execution of the instrument of September 5, 1887, but
refused to admit it to probate as the will of Mary Cawley.

On February 18, 1888, John H. Cawley filed a petition with
the register praying for a re-hearing as to the admission to pro-
bate of the joint paper of March 16, 1886, as the will of Mary
Cawley; for the vacation and setting aside of the probate
thereof, and for the revocation of the letters testamentary
thereon issued. The register granted the first prayer of the
petition, but after the re-hearing refused the other prayers
thereof.

After argument, the court, BUCHER, P. J., sustained the ap-
peal in an opinion which, after reciting the facts, continued as
follows:

The first question that we encounter is, can there be such a
thing as a joint will? Williams on Executors and Jarman on
Wills, resting their opinion on Lord MANSFIELD'S decision in
Earle of Darlington v. Pulteney, 1 Cowp. 260, and Hobson v.
Blackburn, 1 Adams' R. 227, lay it down that joint wills are
not tolerated by law. But these have not been considered as
decisive of the question, and on the authority of Evans v. Smith,
28 Ga. 98 (73 Am. Dec. 751); In re Diez's Will, 50 N. Y.
94; Ex parte Day, 1 Bradf. 476, Schumaker v. Schmidt, 44 Ala.
454 (4 Am. Rep. 139); Betts v. Harper, 39 Ohio St. 641 (48
Am. Rep. 479), it is now considered settled that a will executed
jointly by two persons, which purports to dispose of the separate
estate of the one who should die first to the survivor, is valid,
operating as the separate will of each, the same as if two in-
struments have been made.

But a distinction has been sought to be made where parties
join in the execution of a writing purporting to be a will, but
each one simply undertakes to dispose of his own property, and
those cases in which the parties to an instrument in the form
of a will, jointly executed, treat the separate property of each

as something in the nature of a joint fund from which they make dispositions. In upholding instruments of the former class as valid wills, the principal case, and Evans v. Smith, supra, seem to incline to the opinion that the result might be different, as to instruments of the latter class, and it is so decided in Clayton v. Iverman, 2 Dev. & B. 558, and Walker v. Walker, 14 Ohio St. 157 (82 Am. Dec. 474), and the writings were held not to be valid either as joint wills or as separate wills of the parties. But now, even in England, In re Lovegrove, 2 Sw. & Tr. 453, s. c. 8 Jur., N. S., 842, where two sisters executed a testamentary paper, to the effect that the survivor should have all that remained of the property at the death of the first decedent, and that at the death of the survivor, the property should be divided among certain relatives, it was admitted as the last will of the survivor. So, too, in Betts v. Harper, 39 Ohio St. 639 (48 Am. Rep. 437), there being no revocation, the will upon the death of both sisters was admitted to probate.

But here and now the question is, can either party to a joint will revoke both before and after the decease of either? Upon this point, it will be observed that the joint instrument is sustained as the separate will of each, and it follows logically, as revocation is incident to all wills, that either party may revoke: Betts v. Harper, supra. It is true, 1 Redfield on Wills, 181, citing Lord Walpole v. Orford, 3 Ves. 402; Rivers v. Rivers, 3 Des. 190-195 (4 Am. Dec. 609), seems to consider it settled that mutual wills duly executed are irrevocable in equity after the death of either party. But where two persons agreed to make mutual wills, it would seem that bad faith in the one, either not making his will, or in canceling it after it was made, will not prevent the probate of the will of the other party: Bynum v. Bynum, 11 Ired. (S. C.) 32. So, where two persons had verbally agreed to make mutual wills or bequests in each other's favor, in certain events, on a bill to compel the executors of one to perform the agreement which had been carried out on the part of the other by the execution of a will, it was held that the agreement was within the statute of frauds, as it might not be performed within a year: Izard v. Middleton, 1 Des. 116. So a writing, executed by two persons, purporting to be a will, whereby, in consideration of mutual friendship they mutually promised that, in the event of the death of either,

the survivor should pay the expenses of the last sickness and burial and should enter into the possession of the estate of the other, was held not to be a compact, but a will and revocable by either: Schumaker v. Schmidt, 44 Ala. 454 (4 Am. Rep. 125).

Mr. Bigelow, in a note to 1 Jarman on Wills, says: It appears to be settled that a contract to execute an ordinary will (i. e. not a joint or mutual will), is based upon a good consideration, is binding on the death of the party so agreeing, and may be specifically enforced against his legal representatives: Lord Walpole v. Lord Orford, 3 Ves. 402; Gould v. Mansfield, 103 Mass. 408; Bynum v. Bynum, 11 Ired. 632; Auding v. Davis, 38 Miss. 547; Izard v. Middleton, 1 Des. 116; Rivers v. Rivers, 3 Des. 190 (4 Am. Dec. 609). Our own cases, notably, Johnson v. McCue, 34 Pa. 180; Brinker v. Brinker, 7 Pa. 53; Logan v. McGinnis, 12 Pa. 27; Turner v. Scott, 51 Pa. 126, determine that an express agreement, upon sufficient consideration, to dispose of property by will, or otherwise, may be enforced like any other contract or bargain, and equity and law will indemnify the disappointed party in damages; but it must be a contract to do the particular thing, and upon a sufficient consideration.

Now, in the present case, even if the estate of Mary is liable upon an enforceable contract, it does not follow that the joint will must stand as her true will, and the subsequent will offered for probate be rejected, but the contrary is true. We cannot take a short cut by refusing the probate of the second will, and say that the joint will shall stand as Mary's will, and thus dispose of the whole case. But there is no evidence dehors the joint will itself to establish a contractual relation between these parties, and the joint will per se does not point to any contract; and, regarding the joint will as the separate will of each, there was nothing to prevent Mary from revoking her first will as she has in fact done. The effect of this revocation by Mary, is not to impair Benjamin's will, and the legatees entitled to the residue after Mary's life-interest determines, take his estate all the same, as if Mary had never revoked her side of the will, and whatever she received more than Benjamin's will gives her, her estate must account to Benjamin's executors. But so far as Mary has disposed of her own property, it passes under her own will. Nothing remains save a suitable decree

The court then entered a formal decree sustaining the appeal from the register's decision ; [1] adjudging the paper dated September 5, 1887, to be the last will of Mary Cawley,[2] and ordering the register to admit the same to probate ; [3] vacating the probate of the joint will of March 16, 1886, as the will of Mary Cawley,[4] such vacation in no wise to affect said instrument as. the will of Benjamin Cawley ; and directing that the costs of the appeal be paid equally by the two estates of Benjamin and Mary Cawley.   Thereupon, Horace B. Cawley took this appeal specifying that the court erred :

1–4.  In making the orders contained in. the final decree.[1 to 4]

*Mr. J. Merrill Linn* and *Mr. S. H. Orwig,* for the appellant :

1. The case is without precedent in Pennsylvania.   There are, elsewhere, however, numerous cases of joint wills, mutual wills, and compacts and agreements concerning the disposition of property and estates to take effect after the death of testators and bargainors.   In Dufour v. Pereira, 1 Dick. 419, which has often been quoted and approved and never reversed, Lord CAMDEN sustained a will similar to the joint will now before this court, holding that it could not be revoked after the survivor of the testators had proved it and taken benefits under it as the will of the other testator.   Every other reported decision, so far as it might seem to be against us, rests on facts and circumstances widely different from those of the case at bar. Mary Cawley certainly bound herself not to dispose of her thirty shares of bank stock otherwise than as they were disposed of in the joint will.

2. It appears to be settled that a contract to execute an ordinary will, if based upon a good consideration, is binding, upon the death of the promisor, and may be specifically enforced against his personal representatives : Walpole v. Orford, 3 Ves. 402 ; Canton v. Canton, L. R. 1 Ch. 137 ; Gould v. Mansfield, 103 Mass. 408 ; Bynum v. Bynum, 11 Ired. 662 ; Auding v. Davis, 38 Miss. 547 ; Izard v. Middleton, 1 Des. 116 ; Rivers v. Rivers, 3 Des. 190 (4 Am. Dec. 609).   It would seem to follow from this, that such a contract might be enforced against the party himself in his lifetime, an attempted revocation of a will, made in pursuance of it, not being a ground merely for an action for breach of contract.   Hence, there is here, in

effect, a case of an irrevocable will, whether the agreement be carried out or not: Bigelow's Note in 1 Jarman on Wills, 18; and see Lewis v. Scofield, 26 Conn. 452 (68 Am. Dec. 407). .

3. If the facts appearing on this record, within the four corners of the will and in the testimony taken, constitute a sufficient ground for specific performance in equity, or for the recovery of damages at law, as the court below concedes, then, to avoid circuity of action, the Orphans' Court may declare the joint will irrevocable. A contract by which, for a consideration, a person binds himself to dispose of his property by will in a certain way, is not contrary to any rule of policy, and it may be specifically enforced: Logan v. McGinnis, 12 Pa. 27; Taylor v. Mitchell, 87 Pa. 518. There is no difference between promising to make a will in a certain form, and making such a will with a promise not to revoke it: Dufour v. Pereira, 1 Dick. 419. In the latter case, the promise not to revoke should be specifically enforced and the will sustained, the attempt to exercise the renounced power of making a subsequent will being a fraud on the rights of the promisee.

*Mr. Charles S. Wolfe* (with him *Mr. P. L. Hackenburg* and *Mr. Andrew A. Leiser*), for the appellee:

1. The whole fabric of the appellant's case rests upon the assumption that by the joint instrument Benjamin and Mary Cawley agreed, for a valuable consideration, not to invalidate or change the terms of the bequests and devises therein contained. If this assumption be unfounded, there is an end of his case. We contend in the first place, that the instrument was simply the will of the one who should die first, such being the effect of its language. But, if this be not so, then it was simply the separate will of each, and as such it was at any time revocable by either to the extent that it was his will: Schumaker v. Schmidt, 44 Ala. 454 (4 Am. Rep. 135); Lewis v. Scofield, 26 Conn. 452 (68 Am. Dec. 404); Evans v. Smith, 28 Ga. 98 (73 Am. Dec. 751); Diez's Will, 50 N. Y. 88; Ex parte Day, 1 Bradf. 476; Betts v. Harper, 39 Ohio St. 639 (48 Am. Rep. 477.)

2. There is no evidence in the first instrument, or aliunde, that there was a mutual agreement between the makers, that this and no other should be their will, and that neither should

have the right to revoke it without the other's consent. No such agreement could have been implied, even if the devises and bequests had been joint in form, " we " instead of " I " being used therein : Schumaker v. Schmidt, Lewis v. Scofield, Evans v. Smith and Betts v. Harper, supra. We do not dispute the proposition that one may, for a valuable consideration, obligate himself not to revoke a will made by him, nor do we question the decisions cited in support thereof. Dufour v. Pereira, 1 Dick. 419, which is principally relied on by the appellant, is unsatisfactorily reported, but it seems from the report that there was such mutual agreement and contract in that case.

. 3. Even, however, when there is such a contract, it will not prevent a revocation, nor operate to control the action of a probate court. If the instrument is a will, it may be revoked; as revocability is of the essence of a will. If the testator has bound himself by contract not to revoke it, his estate is liable for the revocation in damages. If that is not an adequate remedy, the rights of the party contracted with may be enforced, as in other cases of inadequate remedy at law, by bill in equity. This seems to us to be the solution of the whole matter of joint wills, and the way out of the confusion into which the decisions on the subject have fallen. It is consistent with the whole current of authorities, and reconciles any seeming conflict in them.

OPINION, MR. JUSTICE WILLIAMS :

The question presented by this appeal is one that has not arisen in Pennsylvania until now. It is important to a correct understanding of the real ground of controversy, to bear in mind the peculiar characteristics of a contract, and those of a will. A contract is an agreement between parties for the doing or not doing of some particular thing. The undertaking of one party is made in consideration of something to be paid or done by or on behalf of the other party, so that the obligation to do, and the right to require performance, are reciprocal. A will, on the other hand, is simply a statement of the purpose or wish of the maker as it exists at the time. As often as his purpose or wish changes, he may change the expression of it. When and why a change shall be made, depends on himself alone. He is answerable to no one for his determination to

make one rather than another disposition of his property. After he has written out his will, and executed it in accordance with the forms of the law, it does not bind him; but, so long as he lives, he may change his own purpose, with or without a reason, and his last purpose properly written out and executed is his "last will and testament," because death makes any further change impossible. The binding force of a contract comes from the aggregatio mentium of the parties. The binding force of a will comes from the fact that it is the last expressed purpose of the testator, in regard to the disposition of his property after his own death. While he lives, it is without force or value, but it begins to speak when he ceases to do so, and thereafter is heard in his stead.

Although these instruments are so unlike, they may be, and sometimes are combined so as to give a testamentary character to what purports to be a contract, or to convert a will into an irrevocable agreement. Whether any given writing is a will or a contract, must be determined by the character of its contents, rather than from its title, or any formal words with which it may begin or conclude. The familiar form of a will is that by which the testator directs how his property shall be disposed of after his death, and may be distinguished or described as the simple will of the maker. If two or more persons own property in common, they may convey it by joining in a deed, or by executing separate conveyances, at their convenience. They may transmit the title, each for himself, by a separate will; and there is no objection, on principle, to their joining in a testamentary disposition of it. Such a will might be properly called a joint will, because executed jointly by several owners, as a means of transferring their several titles to one devisee. The validity of a joint will was at one time denied in England, and has been denied in some of the United States, but the reasons for such denial relate rather to questions of probate than to the power of the several testators, and do not seem to have been regarded as settling the question in the countries where the decisions were rendered: 1 Williams on Executors, 10. Whether, after the death of one or more of the makers of such a will, the surviving maker may make a valid revocation as to his own title or share of the property devised, is an unsettled question and is not involved in the

case before us, for the property to which this will relates was not held in common by the testators.

Another class of questions is presented, when two or more persons make reciprocal testamentary provisions in favor of each other, whether they unite in one will, or each executes a separate one. Such wills may be described as mutual or reciprocal. Their validity does not seem to be doubted, after the death of the respective testators; but the extent of the power of revocation in the survivor, after the death of one or more of the testators, is a question still in controversy and upon which different conclusions have been reached. In Evans v. Smith, 28 Ga. 98, the will was signed by two, and presented by the survivor for probate. No revocation was attempted, and the only question really before the court was the validity of the paper as the will of the deceased signer. The court held it valid, characterizing it as a " double will." In Lewis v. Scofield, 26 Conn. 452, a similar will was presented, and its validity upheld by the court. In Betts v. Harper, 39 Ohio St. 639, the testators were tenants in common. After the death of both, it was probated as the separate will of each, and the earlier case of Walker v. Walker, 14 Ohio St. 157, which had denied the validity of such a will, was distinguished and qualified. The will of a husband and wife making reciprocal provisions for each other, and executed by both, was sustained in Diez's Will, 50 N. Y. 88. In Schumaker v. Schmidt, 44 Ala. 454, two persons, who described themselves as "friends of" many years standing," joined in a will by which the survivor was to take the property of the one dying first. Auerbach, one of the joint makers, made a later will, with a different disposition of his property, and died. The survivor insisted on the irrevocability of the first will, and claimed the estate, but the court upheld the last one. The point in controversy was stated in the opening sentence of the opinion of the court as follows: " Was the writing between Schumaker and Auerbach a compact, and not a will, or a will containing a compact, and therefore irrevocable? " The conclusion of the court was that the writing was not a compact, but a will, and therefore revocable at pleasure. It is worthy of note that the only consideration expressed for the mutual provisions made by the first will, was the " mutual esteem " which each entertained for the other.

This might change in degree, or cease altogether, at any time. While it existed, it explained the mutual or reciprocal provisions contained in the will. It afforded not a consideration, but a reason, for them.

The will now before us was executed by a brother and sister. They were single, had lived many years together, and were feeling the infirmities of age. One owned a house and lot worth about $3,000. The other owned bank stock of about the same value. Their household goods seem not to have been the exclusive property of either. They appear to have lived together in the house, and used the income from the bank-stock, without keeping an account with each other. By their will, they provided that the survivor should have the property of the one first to die, during life, and that it should then go over to remainder-men named. The learned gentleman by whom it was drawn seems to have had Walker v. Walker, 14 Ohio St. 157, in his mind, and to have drawn the paper with the purpose of steering clear of the difficulty suggested by it. To this end the will is made to speak for each devisor separately, thus: "I, Benjamin Cawley, should I be the first to die, and I, Mary Cawley, should I be the first to die, give, devise, and bequeath, and to the survivor of either of us, all the rest and residue of the decedent's estate, both real and personal, to have and to hold and enjoy the same during the life of the survivor, without impeachment for waste, and with leave to use the body of the estate for necessity." After the payment of debts and expenses, and the expiration of the life-estate, the will directs that the residue be divided into nine parts, and then proceeds: "Three of which parts I give and bequeath to John Cawley, two parts to Hepburn Cawley, one part to Horace Cawley, one part to Mary Henson, . . . . one part to Ada Gilmore, . . . . and one part to Emma Harter." H. C. Cawley was made a trustee for Ada, and her share was devised to him thus: "I give and bequeath to H. C. Cawley, in trust, etc.; and the will then defines the nature of the trust, and uses the words, "I distinctly declare that the above trust is an active one."

The singular number is invariably used throughout the will, each testator speaking for himself or herself only, and neither attempting to speak for the other or of the other's property. Each seems to have desired to make the same disposition of

what he or she owned. Both adopted the same written expression of that desire, and executed it. The will so made must be regarded, therefore, as the separate will of each testator, as fully as though the will of each had been separately drawn up and signed. There was no joint property or joint devise. It is not, therefore, a joint will. It is not a contract between the makers in form or in effect. No consideration passed from one to the other, and none is suggested, except the affectionate interest which this aged brother and sister felt for each other. This moved them to provide for each other's comfort by a life-estate in the survivor, but beyond that each gave to the remainder-men only what each owned. Such a will is properly described by the phrase in Evans v. Smith, supra, as a double will. It must be construed and treated as the separate will of each testator who signed it, in the same manner as though a separate copy had been executed by each. It was therefore revocable by both. Benjamin Cawley did not revoke, and his will is to be executed in accordance with its terms. Mary Cawley has exercised the power of revocation, and changed the ultimate destination of her property. Her last will must be followed, therefore, in the distribution of her estate.

The decree of the court below is affirmed, at the cost of the appellant.