## Cawley's Estate. Cawley's Appeal.

[Marked to be reported.]

*Wills—Issue devisavit vel non—Res judicata.*

Where a brother and sister have executed a double will, and after the brother's death the sister has executed another will, making a different disposition of her property than that contemplated by the double will, and the Supreme Court has decided on an appeal from the probate of the double will that the effect of the later will of the sister is to revoke the double will, so far as she is concerned, the validity of the later will may still be attacked on the ground that testatrix lacked testamentary capacity and was subjected to undue influence. The decision on the appeal was not res judicata as to these questions.

Argued May 7, 1894. Appeal, No. 89, July T., 1893, by Horace B. Cawley, from decree of O. C. Union Co., in estate of Mary Cawley, deceased. Before GREEN, WILLIAMS, MC-COLLUM, DEAN and FELL, JJ. Reversed.

Rule on Horace B. Cawley to surrender to John Harrison Cawley, executor, bank stock. Before McCLURE, P. J.

Respondent filed an answer in which he averred that John Harrison Cawley is not the executor of the last will and testament of the said Mary Cawley, deceased, and that this respondent is the executor of the last will and testament of said decedent.

That the paper purporting to be the last will and testament of said Mary Cawley, deceased, and dated Sept. 5, 1887, and upon which the petition of said John Harrison Cawley for a citation or rule to show cause, etc., is founded, was admitted to probate without notice to this respondent or his counsel, notwithstanding the caveat filed with the register of wills of Union county, and an appeal from the probate of said alleged last will and testament has been taken and is pending in this court undetermined; and, for cause herein shown, respondent prays the court to discharge the rule heretofore granted and to dismiss the citation.

Other facts appear by the opinion of the Supreme Court.

*Error assigned* was making rule absolute.

*Samuel H. Orwig* and *J. M. Linn, P. B. Linn* with him, for appellant.—The former case decides that the later instrument must be recognized by the register as decedent's last will, subject, of course, to the right of appeal as in any other case. It does not appear to have been the intention of the court below or of the Supreme Court to shut the door to any inquiry as to the validity of the later instrument. To have done that would have been ultra vires.

To make a decree conclusive the record must show that the matter claimed to be concluded was the very matter passed upon: Williams v. Row, 62 Pa. 118; Sheble v. Strong, 128 Pa. 315; Lewis v. Baker, 151 Pa. 529.

On May 22, 1893, Horace B. Cawley appealed from the definitive decree of the orphans' court of May 16, 1893, to the Supreme Court, and on May 27, 1893, the writ of certiorari from the Supreme Court was received and filed in the orphans' court, the present appeal. The effect, if not at once to open and annul such decree or judgment of the inferior tribunal or court, so that the proceedings to be had in the appellate jurisdiction shall begin de novo, was at least to stay all further

proceedings in the execution of it: Hess's Ap., 1 Watts, 256; Scott's Intestate Law, 515.

*William H. Hackenberg* and *Andrew A. Leiser*, for appellee.—The former decree was conclusive: Hammer v. Griffith's Admr., 1 Grant, 193; Cromwell v. Sac Co., 94 U. S. 351; Myers v. Coal Co., 126 Pa. 582; De Chambrun v. Campbell, 54 Fed. R. 231; Darlington v. Gray, 5 Whart. 486; Souter v. Baymore, 7 Pa. 415; R. R. v. Erie, 27 Pa. 382; Brenner, Trucks & Co. v. Moyer, 98 Pa. 274.

John Harrison Cawley, the executor named in Mary Cawley's will of Sept. 5, 1887, had a right to her bank stock, etc: Wood's Ap., 92 Pa. 379; Fesmire v. Shannon, 143 Pa. 211; Slaymaker v. Bank, 103 Pa. 616; Sibbs v. Saving Fund Soc., 153 Pa. 345; Miller v. Meetch, 8 Pa. 417; Bowman's Ap., 62 Pa. 166; Harberger's Ap., 98 Pa. 29.

The orphans' court had jurisdiction and authority to make the decree in this case: Odd Fellow's Saving Bank's Ap., 123 Pa. 356; Marshall's Estate, 138 Pa. 285; Mulholland's Est., 154 Pa. 491; Brooke's Ap., 102 Pa. 150, Watts's Est., 158 Pa. 13.

OPINION BY MR. JUSTICE WILLIAMS, July 11, 1894:

A connected statement of the facts relating to the two wills signed by Mary Cawley will reduce the ground of controversy in this case within very narrow limits. Benjamin and Mary Cawley were brother and sister. Both were unmarried. They had lived together for many years, and in 1886 were both aged and infirm. The house in which they lived belonged to Benjamin and was worth some three or four thousand dollars. Mary owned some bank stock amounting to near the same sum. Their furniture seems to have been owned in about equal parts by each of them. It is apparent that in 1886 both of them realized fully that they had not long to live, and that the survivor of them would need all that both owned in order to his or her comfort during the survivorship. They accordingly sent for counsel and had a will prepared to be executed by both, so that the estate of the first to die should pass to the survivor for life, and disposing of the remainder in a manner that was at the time satisfactory to both. They executed this

will in 1886. Benjamin died in August, 1887. The 'double will was then probated as the will of Benjamin and letters testamentary issued to the executor named therein. In September, 1887, Mary, having apparently changed her mind as to the disposition of her own separate estate, made a new will naming a different remainderman, and executor, from that named in the double will which had been probated as the will of her brother. She died in January, 1888. The executor of the double will thereupon presented it again to the register, and it was admitted to probate as the will of Mary Cawley, and letters testamentary issued to him thereon. After this was done the second or separate will of Mary Cawley was presented to the register by John Harrison Cawley, the executor named in it. He was informed of the probate of the double will, and the issuing of letters testamentary to Horace B. Cawley, and did all that was left for him to do, viz: he took an appeal from the decree of probate upon the double will, alleging that the will so proved was revoked by the later will in his possession.

The answer made by H. B. Cawley was, in substance, that the double will was a contract as well as a will, and that it was not in the power of Mary to revoke it after the death of her brother and its probate as his will. This was the question heard and determined in the court below on that appeal. It was the only question heard and determined in this court when the appeal was heard here: Cawley's Appeal, 136 Pa. 628. The learned judge of the orphans' court held that the double will was revocable notwithstanding the death of Benjamin Cawley, and that the legal execution of a later will amounted to a revocation. From this ruling H. B. Cawley, executor named in the double will, appealed to this court. He sought to maintain the position, taken in the court below, that Mary Cawley could not revoke the double will, but was bound by it as to her separate estate by her acceptance of a life interest under it from her brother. The appellee contended on the other hand that the will signed by Benjamin Cawley and his sister was revocable by either, and that the decree of the orphans' court should be affirmed. This was the precise question raised and determined. In concluding the opinion in Cawley's Appeal we said that the double will was revocable by the testators in the same manner that separate wills would have been, and added:

" Benjamin Cawley did not revoke and his will is to be executed according to its terms. Mary Cawley has exercised the power of revocation and changed the ultimate destination of her property. Her last will must be followed therefore in the distribution of her estate." This was said with reference to the question then before us, which was whether the double will was revocable or not. If it was not revocable then the decree of probate appealed from was right, and the double will controlled. If revocable, then the last legally executed will, which it was alleged superseded the first, was entitled to probate so far as this question was concerned. When offered for probate it was subject to the same objections as it would have been if the double will had never been executed or proved. It is probable that the learned judge of the orphans' court, had all the facts that now appear been brought to his attention on the hearing of the appeal from the probate of the double will, would have opened the decree of probate and directed the contestants to produce the second will and proceed to make proof of its execution and validity in the usual manner. Both wills would then have been before the register and the court below at the same time. The legal question over the power of revocation, and the question of fact over the actual revocation would have been considered at the same time, an issue devisavit vel non directed to determine testamentary capacity, and a final order deciding which of the two wills was the last will and testament of Mary Cawley would have settled the whole contention. But the facts did not appear. The former appeal turned upon the power of revocation. The second will is now offered for probate and it is the duty of the proponent to establish its validity in the usual way. It is not a valid revocation of the double will, unless it is a valid will executed by one having testamentary capacity and without undue influence. These questions have not been heard. The proceedings in the first appeal might have taken such shape as to enable the parties to raise them, but they did not. They are now raised regularly. The validity of the separate will as a revocation of the double one depends upon them, and the appellant has a right to be heard upon the testator's capacity and upon the exercise of undue influence over her. If the proponent can establish the alleged last will he will take under it.

If he cannot, then he has no right to complain if the first or double will be again admitted to probate upon his failure to establish its revocation after full opportunity to be heard upon that subject.

The decree appealed from is reversed and the record remitted for further proceedings in accordance with this opinion.