## WILLS.

[Circuit Court of Lucas County.]

AMEDIUS M. COGHLIN ET AL V. JOHN T. COGHLIN ET AL.

Decided, January 25, 1904.

*The Inhibition as to Joint Wills—Separate Wills of Husband and Wife—Devising Separate Property—Not Joint Because the Disposition Made of Property is Identical.*

1. Husband and wife may make the same testamentary disposition of their property, so that their respective estates may take the same course and be distributed in the same way after death; and where each by separate will undertakes to create the same trust in their respective estates for a certain number of years, the validity of the trust so created by the husband is not affected by, nor will it be terminated by reason of the invalidity of the wife's will, which is invalid on account of its defective execution, the wife dying before the husband and probate of her will being refused.

2. A joint will is not created by the execution of separate and distinct wills at different times, and the making of separate and distinct codicils to such wills at the same time by husband and wife, wherein disposition is made of the separate property and estate of each (it not appearing that the wills were in the nature of a compact), notwithstanding the will of each refers to the will and to the property and estate of the other, and that the disposition in both is practically identical.

HULL, J.; HAYNES, J., and PARKER, J., concur.

This action was brought in the court of common pleas to set aside certain portions of the will of Dennis Coghlin, especially the part of the will creating a trust and putting all of his real estate in trust for a certain period of time, and to partition such real estate among his legal heirs. The action was brought by certain of the legal heirs of Dennis Coghlin, making all of the other heirs and their representatives defendants, and also The Ohio Savings Bank & Trust Company, defendant, as administrator with the will annexed, the bank acting as administrator with the executor, John T. Coghlin, who is named in the will as such executor. A demurrer to the petition was filed in the court below by the bank, the administrator with the will annexed, and that demurrer was sustained by the court of common

pleas, and the plaintiffs, not desiring to plead further, judgment was entered in favor of the defendants dismissing the petition. Thereupon the case was appealed to this court and was argued here upon the demurrer to the petition.

The claim made by the plaintiffs, in substance, is: That about the same time that Mr. Coghlin made his will—about a year later—Mrs. Coghlin made a will, which is in effect a counterpart or duplicate of the will of Dennis Coghlin, for the disposition of her estate, and subsequently, in June, 1896, a codicil was added to each of these wills, these codicils being identical with each other except so far as it was necessary to change them to make them applicable to the wills and property of these two persons, and the claim is that the result is, in effect, a joint will—an attempt to dispose of the estates of Dennis Coghlin and of Ella Coghlin as one estate—as a joint fund and joint property, and that although they are written separately and executed separately, the effect is, it is claimed, the same as though they had been written upon the same paper and executed and attested together, and that they, therefore, fall within the inhibition of the law of this state as laid down by the Supreme Court against joint wills, and that this objection is especially applicable to the trust which is created for the disposition of the property named in these two wills, and was to continue before final distribution was made until the year 1910.

It is claimed by counsel for the demurrer that the two wills do not constitute a joint will, and that under the law of this state, as announced by the Supreme Court in the more recent decisions at least, there is no legal objection to these dispositions of this property and that, therefore, the demurrer to the petition should be sustained.

The petition discloses that Mr. Coghlin's will was made in the year 1893, and Mrs. Coghlin's will was made in the following year, and in June, 1896, a codicil to each will was made and executed. Mrs. Coghlin died May 6, 1900, three months before her husband's death—which occurred August 6, 1900—he having survived her about three months. Upon her death (presumably immediately upon her death), as stated in the petition, her will was offered for probate; but probate was refused, on the ground

that it had not been properly attested, so that the paper writing signed and executed by her never in fact took effect as a testamentary disposition of her property, and her property was disposed of according to the laws of descent and distribution, and when Dennis Coghlin died, on the 6th of August, 1900, there was no legal will of his wife in existence. The estate comprised both real and personal property, the estate of each being large, the personal estate of Mr. Coghlin amounting to about $300,000, and his real estate to something over $600,-000, making over $900,000 in all. The personal property of Mrs. Coghlin amounted to about $33,000 and her real estate to about $700,000. Mr. Coghlin in his will, after giving to his wife the household property about the homestead which belonged to her, disposed of all his property through the trust to which I have referred. It provided that all of the property, real and personal, should be held in trust by his executors until the year 1910, if both he and his wife were dead at that time, and if either survived later than that then the trust was to continue until the survivor died. The will also provided that the executor should give to Mrs. Coghlin whatever was necessary to her support, if she needed anything in addition to her own estate during this period. At the expiration of the trust the property was to be divided among the children of Mr. and Mrs. Coghlin. *per stirpes,* the children of any child dead to receive the same share that the child would have received had it been living, and was thus to be divided among the children and grandchildren, if any of the children of Mr. and Mrs. Coghlin died.

In the codicil, to which reference has been made—which was executed on the 17th of June, 1896, the provisions as to the trust were altered in some respects. It was provided in the codicil that instead of a division being made by the executors, as provided under the will, that the division of the estate should be made at the expiration of the trust by three "friends," as they were called, of Mr. Coghlin, John S. Kountz, Charles F. Adams and Lawrence Newman, if they should be living, and in case any one of them was dead the probate court should appoint a man to serve. They were to report their division of the estate and that should be binding upon the executors, who should

make the division according to the report of these three persons. The codicil provided further that in the final distribution of his estate they should take into consideration the estate of his wife, Ella Coghlin, and the amount which each of the beneficiaries received from her estate, and the two estates were to be treated as one estate and the property divided so that the division would be equal among the various beneficiaries, taking into consideration the property which they got from the estate of their mother, Mrs. Coghlin. The codicil to the will of Mrs. Coghlin executed upon the same date, made the same provision as to her estate. In the will of Mrs. Coghlin there was the same provision in regard to a trust—after making certain special bequests and devisees—the same provisions as those contained in the will of Mr. Coghlin, providing that the property be retained in trust until 1910 and the codicil provided in terms identical with those made by her hsuband in his codicil, that what her children received from the estate of her husband was to be taken into consideration and the two estates' were to be treated as one estate. With these two wills thus made and executed and the codicils thereto, Mrs. Coghlin died three months before her husband, and her will, with the codicil, was tendered for probate and probate was refused, and it never went into effect and never had any legal existence as a will.

It is claimed that considering the two wills together, they must be regarded as a joint will and the will of Mr. Coghlin must be regarded as a part of the testamentary disposition of the property under a joint will, and that a trust so created is invalid.

It was held in 14 O. S., 157 (*Walker* v. *Walker*) :

"A joint will is unknown to the testamentary law of this state, and is inconsistent with the policy of its legislation. And where a husband and wife, each being the separate owner of property, join in the execution of an instrument in the form of a will, and treating the separate property of each as a joint fund, bequeathed legacies and devised lands to divers persons, the same can not be admitted to probate as the joint will of both parties, nor as the separate will of either.

"Although some of the provisions contained in the body of such will may be, in form and effect, several, yet inasmuch as the

provisions of such will partake of the nature of a compact, in which such provision is influenced by all the rest, all the provisions of the will must stand or fall together.''

The will of these two parties, Mr. Walker and his wife, was jointly executed and attested and undertook to make a joint disposition of their property, some of their property being joint property and some owned in severalty. The Supreme Court held that this could not be done. The court say, on page 166 of the opinion:

''And the case is one in which two parties, husband and wife, attempt to make a will, which is not joint in form merely, and capable only of a several operation and effect; but one which is joint in substance; where the parties to it are severally owners of property in their individual right; where they attempt jointly to dispose of the property of each and to treat it as a joint fund, jointly devising the real property of the wife, and jointly bequeathing legacies out of the personalty of both, without designating the proportion in which the personalty of each or either shall contribute for their payment; and from which it is evident that the provisions of the instrument must have been a matter of negotiation between the parties, and in which the disposition which each of the parties would be willing to make of his or her property would, of course, be influenced and modified by the dispositions which would affect the property of the other. In short, if there can be such a thing as a joint will, this is a joint will.''

After Mrs. Walker's death, Mr. Walker, disregarding this will, disposed of some of the property, thus indicating, so far as that property was concerned, his intention not to abide by this will. The great objection that is made to joint wills by the courts, so far as I can discover, is—especially where property held in severalty is undertaken to be disposed of by two or more —that such a will is irrevocable by either without the consent of the other, and this, the courts say, is foreign and contrary to the very essence of a testamentary disposition of property. It is said a will, to be valid, must always be the *last* will of the person, it is called his ''last will and testament,'' and that a testamentary disposition of property which so binds a man to stand irrevocably by it, takes away from him the power to revoke it or alter it in any respect and can not be upheld as

a testamentary disposition of property; that the nature of a will, some of the authorities say, is always, and must be ambulatory—following the changing moods and likes and dislikes of the author of the will who becomes the testator at death. It is said changes may occur, children may die, or become unfilial, or a son may become crippled, as one case says, and the testator must be left free to change and alter a disposition that he has made of his property by will, and that a document which is of such a nature as to take unto itself the character of a compact, which is irrevocable by either party without the consent of the other, can not be sustained. That is the doctrine of this case and the doctrine of some other cases. The weight of authority, however, is that joint wills, if they are not changed or revoked during the life of either—each abiding by the will—will be sustained, although the will is executed and attested jointly in one paper, and in a case in 39 O. S., 639 (*Betts* v. *Harper*), the doctrine of *Walker* v. *Walker*, 14 O. S., 157, is somewhat limited. The Supreme Court say in this case, in the syllabus:

"Tenants in common of real estate who are also owners, severally, of personal property, may dispose of the same by will, by uniting in a single instrument, where the bequests are severable and the instrument is not in the nature of a compact, but is, in effect, the will of each, revokable by him, and subject to probate as such several will; and where the instrument is not offered for probate until the death of all executing it, the same may then be admitted to probate as the will of each and all such persons. *Walker* v. *Walker*, 14 O. S., 157, limited."

This will which was sustained by the Supreme Court is in one short paragraph:

"We, Agnes Harper and Penrose Harper, of the county of Hocking and state of Ohio, do make and publish this our last will and testament, in manner and form following, that is to say: First, it is our will that our funeral expenses and all our just debts be first fully paid; secondly, that all of our property, both real and personal, go to James Betts and John Drue Betts and their heirs forever; lastly, we hereby constitute and appoint James Betts to be executor of this our last will and testament, revoking and annulling all former wills by us made, and ratifying and confirming this, and no other, to be our last will and testament."

The court say, on page 641 of the opinion, delivered by Judge Okey, referring to the Walker case:

"The case before us is unlike *Walker* v. *Walker*. Agnes Harper and Penrose Harper were each the owner of personal property, and they were owners, as tenants in common, of real estate. Each desired to bequeath her personal property to James Betts and John D. Betts, and each desired to devise to them her undivided share of the real estate. They could unquestionably have done this by two instruments, but they could do it as effectually by one. This instrument was, in effect, the separate will of each. Either could have revoked it, so far as it was her will. On the death of Agnes, in 1872, the instrument might have been admitted to probate as her will; and in 1874 it might have been admitted to probate as the will of Penrose; but in 1875 it was properly admitted to probate as the will of both. The authorities, it will be seen, are in some conflict, but the view we have stated is supported by reason and the manifest weight of authority."

In the case in 14 O. S. the Supreme Court mention the fact that the singular number is used in the Wills act instead of the plural, arguing from this that it was not contemplated by the Legislature that more than one person should join in a will. The court in the 39 O. S. criticise this and say, on page 641 of the opinion:

"The provisions of the English statutes and the statutes of the various states upon the subject are precisely similar to our own; and the conclusion that they indicate a policy that two or more persons may not unite in the same instrument in making their wills, whatever the form of the instrument may be, is only reached by a rigid, and as we think, altogether unwarranted adherence to the mere letter of the statute. The provisions of the statute relating to the execution of deeds are similar, and yet nobody has ever doubted that any number of persons having an interest in property may join in an instrument conveying it."

A case in 136 Pa. St., 628 (*Estate of Mary Cawley, deceased*), is a comparatively recent case, and the authorities are collected to some extent in the opinion and discussed. The court say in the syllabus, second paragraph:

"If two or more persons own property in common, there is no objection, on principle, to their joining in a testamentary

disposition of it, and this might be called a joint will. Whether, after the death of one or more of the makers, the surviving maker may revoke such a will, as to his title or share of the property devised, not decided.

"Brother and sister joined in executing a paper in the following form: 'I, B. C., should I be the first to die, and I, M. C., should I be the first to die, give, devise and bequeath, and to the survivor of either of us, all the estate of the decedent for life with remainder over. Throughout the paper, except in the clause appointing an executor, the operative words were in the singular number.

"This instrument was not a contract, in form or effect; nor, there being no joint property or joint devise, was it a joint will. It was properly a double will, and must be construed and treated as the separate will of each maker, as fully as though a separate copy had been executed by each. Wherefore, after the death of one, it was revokable by the other as to his own property."

The brother died, in this case, and after that the sister died. This joint or double will, made March 16, 1886, was offered for probate. Later, on the same day, a will was presented which had been executed by the sister after the making of the joint or double document, to-wit, on September 5, 1887. The register of deeds held that this last will could not be admitted to probate. The case was taken to the next court above the register— the name of the court does not appear in the report—and that court held that by the making of the subsequent and separate will she revoked her disposition of the property as made in this joint document. The opinion of the court is given in this volume and it is quite full upon that question, holding that she had the power to revoke the disposition of her property that she had made in the joint will; and the Supreme Court of Pennsylvania sustains this holding, and discusses the question on page 638 of the opinion, citing numerous authorities, among which is *Walker* v. *Walker*, 14 O. S., 157. They say:

"Another class of questions is presented, when two or more persons make reciprocal testamentary provisions in favor of each other whether they unite in one will, or each executes a separate one. Such wills may be described as mutual or reciprocal. Their validity does not seem to be doubted, after the death of the respective testators; but the extent of the power of revocation in the survivor, after the death of one or more of the

testators, is a question still in controversy and upon which different conclusions have been reached. In *Evans* v. *Smith,* 28 Ga., 98, the will was signed by two, and presented by the survivor for probate. No revocation was attempted, and the only question really before the court was the validity of the paper as the will of the deceased signer. The court held it valid, characterizing it as a "double will." In *Lewis* v. *Schofield,* 26 Conn., 452, a similar will was presented, and its validity upheld by the court. In *Betts* v. *Harper,* 39 O. S., 639, the testators were tenants in common. After the death of both it was probated as the separate will of each, and the earlier case of *Walker* v. *Walker,* 14 O. S., 157, which had denied the validity of such a will, was distinguished and qualified."

Other cases are referred to on this page of the opinion. The court say, on page 640, referring to this will:

"Both adopted the same written expression of that desire, and executed it. The will so made must be regarded, therefore, as the separate will of each testator, as fully as though the will of each had been separately drawn up and signed. There was no joint property or joint devise. It is not, therefore, a joint will. It is not a contract between the makers in form or in effect. No consideration passed from one to the other, and none is suggested, except the affectionate interest which this aged brother and sister felt for each other."

It seems to us that these two papers—Dennis Coghlin's will and the will of his wife—do not constitute a joint will, as to bring this will within the prohibition of any authority that has been called to our attention. The property disposed of in the two wills is separate property. Mr. Coghlin had his estate, amounting to nearly a million dollars, and Mrs. Coghlin had her estate, amounting to something more than seven hundred thousand dollars. Both desired, apparently, that their property be held in trust until the year 1910, or longer if either survived longer; the trust was to continue until the death of the survivor, and both desired that their property should then be divided among their children, share and share alike, and each provided for the same manner of division and each desired that their children in the final disposition of their estates should have the same amount of property in value, considering the estate of both and the share that each child got from

the estate of the other. The wills were executed and attested at different times and disposed of different property—separate property and separate estates. They do not seem to have taken the form of a compact or an agreement, which is regarded as objectionable by some of the authorities, but they are separate and distinct testamentary dispositions of property, although the disposition in each is practically identical with that of any other. There is nothing that prohibits a husband and wife from disposing of their property by will in the same manner, and so that their estates shall take the same course and be distributed in the same way after their death, or shall be distributed at the same time after their death among their children, looking to the welfare of the children and desiring that each shall have the same share considering the estates of both. This form of a disposition of their property could not have been brought about, of course, without discussion between them; that is clear—the matter must have been talked over and each must have known the manner of will that the other made, but that would not invalidate the disposition, so far as we are able to discover, or make it objectionable on the ground that it was a joint will. But, in any event, in this case it appears that there never was in fact but one legal will; there never was in fact but one will. While Mrs. Coghlin had undertaken to make a will, her will was invalid, null and void, and so held when offered for probate, and this was done before the death of Mr. Coghlin, for, according to the petition, she died three months before his death, and the petition alleges that upon her death her will was offered for probate and probate refused. So that at the time of his death, with this will standing unrevoked and unaltered, his wife's will having been held null and void, there being no allegation to the contrary, it would be presumed that Dennis Coghlin knew this to be the fact. At least there is no allegation in the petition that he did not know it, and with no will of his wife in existence at the time of his death, his will is left as the testamentary disposition of his property. But, regardless of that, if his wife's will had been admitted to probate, or if he had died first leaving her with her will to be afterwards admitted to probate, in our judgment these two documents, taken

together, are not within any rule of law prohibiting such a testamentary disposition of property. We think that while they refer to each other and each refers to his or her estate and to the estate of the other, they are in reality and in fact separate and disinct dispositions of property and separate wills under the authorities, some of which I have referred to, and we think that either had the power to revoke his or her will if he or she saw fit to do so. But neither of them attempted to revoke the will so made.

The ultimate object of this action, or its real object, is a partition of the real estate described in the petition; to set aside the trust and partition the real estate among the legal heirs of Dennis Coghlin. It is said that with Mrs. Coghlin's will declared null and void, this estate can not be divided as provided for in this will. Whether this is true or not, we do not think it necessary to decide at this time; that question will come up properly when the time comes for a distribution of the estate, at the expiration of the trust, January, 1910. That does not affect the trust itself, that does not affect the provision of Mr. Coghlin's will that his estate should be held in trust until January, 1910, the heirs until that time to receive only the income of the estate. What effect the invalidity of the will of Mrs. Coghlin may have upon the distribution, if any, at that time, we shall not now discuss or decide. The main object and purpose of this will evidently was that the property should be held in trust, the heirs not to receive the property or to have any power to dispose of it in any manner until the expiration of the trust, they receiving during that time only the income of the estate. This was the main feature of this testamentary disposition of this property. That is not affected in any way by the death of Mrs. Coghlin or by the fact that her will was not admitted to probate, or the fact that she had made a will of similar character, so far as the trust was concerned, and it is the trust provision of the will, so far as it relates to the real estate, that is sought to be set aside here in order that it may be partitioned among the heirs of the estate. It is not asked that the trust, so far as the personal property is concerned, shall be set aside or altered in any

way.  The demurrer to the petition will be sustained, and the petition dismissed.

*Smith & Beckwith* and *Cole, Whitlock & Milroy,* for plaintiffs.
*Hamilton & Kirby,* for defendants.