## Lewallen's Estate.

*Contract—City agent—Family arrangement—Compromise—Consideration —Contract to dispose by will.*

The sufficiency of the consideration for a compromise is not to be determined by the soundness of the original claim of either party. The very object of compromise is to avoid the risk or trouble of that question. This principle is especially applicable to family arrangements and compromises.

A man or a woman may enter into a binding contract to dispose by will in a particular manner of the whole or any part of his or her property, real or personal. Such a contract must of course be based on sufficient consideration.

The decedent and his wife being at the time domiciled in New Jersey, had a conversation a few months before she died intestate, relative to ten shares of the stock, which she owned, of a building and loan association. She said, addressing her husband, "when I die I want Clara and Florence," her two children, "to have all the building and loan money. Pap, if I die before this runs out, I want you to see that they have it." His reply was, "Rachel, I shall always try to carry out all your desires as you wish, of course." Under the law of New Jersey the entire personal estate of a married woman dying intestate becomes the property of her husband to the exclusion of her children, but she may make a will. Immediately after his wife's death, decedent opened negotiations with his children which resulted in their signing a paper transferring to him all their right, title

and interest to whatever estate they acquired through their mother upon her death, and in lieu thereof they accepted his solemn promise that all the property he might own at his death should go to them. *Held*, that the promise was based on a good and valuable consideration, and should be enforced after the decedent's death in favor of his children.

Argued Oct. 13, 1904. Appeals, Nos. 81 and 82, Oct. T., 1904, by Sophia Lee and Etta Jones, legatees, from decree of O. C. Phila. Co., Jan. T., 1904, No. 139, dismissing exceptions to adjudication in estate of Josiah Lewallen, deceased. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Exceptions to adjudication.
The facts appear by the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to adjudication.

*Francis Chapman*, with him *S. Spencer Chapman*, for appellant.—There was no sufficient consideration for the decedents' promise: Conover v. Stillwell, 34 N. J. L. 54; Day v. Gardner, 42 N. J. Eq. 199 (7 Atl. Repr. 365); Updike v. Titus, 13 N. J. Eq. 151; Condon v. Barr, 49 N. J. L. 53 (6 Atl. Repr. 614); Kennedy v. Ware, 1 Pa. 445; Gardner v. Schooley, 25 N. J. Eq. 150; Rue v. Meirs, 43 N. J. Eq. 377 (12 Atl. Repr. 369); Drake v. Lanning, 49 N. J. Eq. 452 (24 Atl. Repr. 378); King's Est., 150 Pa. 143.

*Alfred N. Keim*, with him *Joseph A. Reed*, for appellee.— The consideration was sufficient to support the promise: R. R. Co. v. Nat. Bank, 102 U. S. 14; Board of Foreign Missions v. Smith, 209 Pa. 361; Meanor v. M'Kowan, 4 W. & S. 302; Muirhead v. Kirkpatrick, 21 Pa. 237; Fink v. Farmers' Bank, 178 Pa. 154; McCoy v. Hutchinson, 8 W. & S. 66; Walworth v. Abel, 52 Pa. 370; O'Keson v. Barclay, 2 P. & W. 531.

OPINION BY RICE, P. J., March 14, 1905:
The decedent and his wife, being at the time domiciled in New Jersey, had a conversation a few months before she died intestate, relative to ten shares of the stock, which she owned,

of a building and loan association. She said, addressing her husband, " when I die I want Clara and Florence," her two children, " to have all the building and loan money. Pap, if I die before this runs out, I want you to see that they have it." His reply was, " Rachel, I shall always try to carry out all your desires as you wish, of course." Counsel agree that by the law of New Jersey, the entire personal estate of a married woman dying intestate becomes the property of her husband to the exclusion of her children, but she may make a will. The appellants' counsel has made it quite clear, also, that, as the wife retained full control and dominion over the property, and could do with it what she pleased, the foregoing conversation did not create a present trust in favor of the children and did not amount to an equitable assignment, or a gift inter vivos. And, although it is to be presumed that she knew that the law gave her the right to make a will, and although it be fairly inferable, from the absence of any evidence of an alteration of her wish as to the disposition of the property, that she died confiding in her husband's promise to see that it would go to her children, yet, it is doubtful whether these facts, standing alone, would sustain a decree declaring him to be a trustee ex maleficio. If this were a complete statement of the case, there would be lacking the essential fact that she was induced by his promise to refrain from making a will, and we are not prepared to say that this fact is to be legally implied from the others. But the facts above alluded to do not stand alone. The husband knew whether or not he had done that which placed him under an obligation, enforceable in equity, to fulfill his promise. He knew, to say the least, that the prima facie title to the property which the intestate laws gave him was open to attack upon that ground ; and, owing to his superior knowledge of the facts, he was, of all persons, the best qualified to judge whether such attack was likely to be successful. Being thus situated he chose to procure from his children a transfer of the right, title and interest, which, as shown by their manner of signing the paper, they asserted they had acquired through their mother upon her death, and in lieu thereof they accepted his solemn promise that all the property he might own at his death should go to them. His conduct was highly significant as bearing upon the question whether he was under an enforceable obligation to

fulfill the promise he had made to his wife. He acted as if he was, or at least, as if he believed himself to be; and he knew the facts. But grant that this conduct was not equivalent to a formal recognition and admission of his children's right to the property, does it follow that the sufficiency of the consideration for his promise to them is dependent upon full proof,—such as would be required to sustain a decree declaring him a trustee ex maleficio—that he was under such obligation? The learned auditing judge held in a clear and convincing opinion, which was approved by the court in banc, that it does not, and in that conclusion we all concur. Their claim, which he recognized and induced them to surrender, may have been doubtful, but it was not a groundless one, trumped up in bad faith in order to force him to a settlement. They dealt on the basis of a claim subsisting in them which it was desirable for him to have them surrender to him. He did not wait for them to assert it in a formal way, but, within a few days after his wife's death, anticipated such action on their part and opened the negotiations himself. The fact that he moved first does not, under the circumstances, affect the validity of the arrangement. By his contract with them he got a clear title, which otherwise would have been fairly open to dispute; he averted litigation in which, for aught we know, the facts might have been developed that would have established their right to the property; and he induced them to do that which precluded them from instituting a legal investigation of the matter until after his death—more than ten years after the date of the contract—when, owing to the impairment of the memory of living witnesses by the lapse of time, the death and departure of others and the loss of documentary evidence, it might be impossible for them to prove their title. "The sufficiency of the consideration for a compromise is not to be determined by the soundness of the original claim of either party. The very object of compromise is to avoid the risk or trouble of that question:" Fink v. Farmers' Bank, 178 Pa. 154. This principle is especially applicable to family arrangements and compromises: Wilen's Appeal, 105 Pa. 121. We are of opinion that the evidence of a good as well as valuable consideration for the decedent's promise to his children fully meets the requirements of the law of New Jersey as thus stated in Drake v. Lanning, 49 N. J. Eq. 452 (24 Atl.

Repr. 378) : "The law governing contracts of this class is well settled in this state. A man, or, as in this case, a woman, may enter into a binding contract to dispose by will, in a particular manner of the whole or any part of his property, real or personal. If the character of the contract or its subject-matter be such as requires it to be in writing, in order to satisfy the statute of frauds, it may, though made by parol, nevertheless, be enforced in this court on the score of part performance by the one party to the extent of irretrievably altering his position, so that it would be a fraud upon him to refuse the performance of the other part of the contract. But whether witnessed by a writing, or resting wholly in parol, like all other enforceable contracts, it must be founded on a sufficient consideration, either of benefit to the one party or of detriment to the other, or of both combined." The consideration must have some value in the eye of the law, and this it had; but whether it was equivalent to the promise which was given in return was for the parties to determine when they made the bargain.

The decree is affirmed, the costs of each appeal to be paid by the appellant therein.