## Park *v*. Park, Appellant.

*Contract—Parent and child—Parol contract as to land—Statute of frauds —Evidence.*

1. In an action of ejectment for a certain timber tract of thirty-two acres, it appeared that the plaintiff claimed the tract under a parol contract with his deceased father, and that the defendant, a brother of the plaintiff, claimed the tract by a deed from the father, subsequent in date to the parol contract. The plaintiff produced a number of witnesses, most of whom as members of the family, were adverse to his right, and these witnesses testified that the plaintiff about the time he graduated from a commercial college, had an offer of a position at a good salary, and that he wished to take it, but that at his father's request, he gave it up, and went to live with his parents at his father's farm under an agreement by which he was to have the farm and the timber tract in question as his own property, and that he was to support his father and mother during their lives. There was also proof that the plaintiff went upon the farm, took absolute control of it, including the timber tract, made valuable improvements upon the premises, including a number of new constructions, and that he had paid the taxes which, after he had taken possession, were assessed in his name. It was also shown that the father had made numerous declarations relating to the parol contract, and to the effect that his son owned the land; and there was proof that he had made a will by which he had devised all the land situate in the township in which the farm and timber tract was situated, to plaintiff. *Held*, that the evidence was sufficient to support a verdict and judgment in favor of the plaintiff.

2. In such a case evidence as to the declarations of the father made in the absence of plaintiff fifteen years after the testimony established that a parol agreement had been made and executed by the entry of the plaintiff into possession of the land, and a like period after the father had executed his will in pursuance of the agreement, was properly excluded.

Argued Nov. 18, 1908. Appeal, No. 178, Oct. T., 1908, by defendant, from judgment of C. P. Bradford Co., May T., 1907, No. 82, on verdict for plaintiff in case of Mercur Park v. Sumner E. Park. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Ejectment for thirty-two acres of land in Litchfield township. Before FANNING, P. J.

The facts are stated in the opinion of the Superior Court.

*L. T. Hoyt,* of *Hoyt & Schrier,* for appellant, cited: Wright v. Nulton, 219 Pa. 253; McClure v. McClure, 1 Pa. 374; Gangwer v. Fry, 17 Pa. 491; McKowen v. McDonald, 43 Pa. 441; Moyer's App., 105 Pa. 432; Detrick v. Sharrar, 95 Pa. 521; Wack v. Sorber, 2 Whart. 387.

*William Maxwell* and *I. McPherson,* with them *A. L. Laws,* for appellee, cited: Shroyer v. Smith, 204 Pa. 310; Matthews v. Matthews, 11 Pa. Superior Ct. 381; Wright v. Nulton, 219 Pa. 253.

OPINION BY PORTER, J., April 19, 1909:

This action of ejectment was instituted in the court below under an amicable agreement of the parties, in pursuance of which Mercur Park was made the plaintiff in the issue and Sumner E. Park the defendant. Both parties to the record claimed title to the premises in dispute under Benjamin Park, their father.

The plaintiff, Mercur Park, claimed the premises by virtue of an alleged parol contract entered into between himself and his father before or about the year 1889, by the terms of which the plaintiff, who had just completed his education at a business college at Elmira, New York, and had been offered a desirable situation paying a good salary in the city of New York, was to decline the offer of that position and give up the idea of entering upon business life and return to the farm in Bradford county owned by his father, upon which his parents then resided, and work and manage the farm and take care of his parents so long as they lived; in consideration of which his father agreed to give him the entire farm, including a timber tract of thirty-two acres, which was distant about eighty rods from the main tract, separated by intervening land; the timber tract being specifically mentioned in the agreement, which provided that the plaintiff should take hold and enjoy all the land which his father had in Litchfield township, Bradford county, Pennsylvania. The plaintiff alleged that in pursuance of said contract he declined to accept the position in New York, abandoned the idea of engaging in commercial pursuits, removed to the farm

where his parents then resided and at once took complete and absolute possession thereof, exercising all the rights of sole and absolute ownership, and fully and faithfully complied with all the stipulations of his contract, during the lifetime of his parents, his mother having died in 1903 and his father, Benjamin Park, in 1905. The defendant claimed title under a deed from his father, Benjamin Park, dated August 4, 1904, conveying to him eight acres, being one-fourth of the timber lot above mentioned. The defendant resisted the right of the plaintiff to recover upon the ground that the evidence produced by the plaintiff was insufficient to warrant the submission to the jury of the question of the existence of the contract between Benjamin Park and his son Mercur and the fulfillment of its terms by the latter. These questions were by the learned judge of the court below submitted to the jury in a clear and adequate charge, the verdict being in favor of the plaintiff, and upon that verdict judgment was entered. The defendant appeals. The specifications of error raise but one serious question: was the evidence, if believed by the jury, sufficient to establish the alleged agreement between Benjamin Park and his son Mercur, and if so, was the contract within the statute of frauds?

The plaintiff called many witnesses whose testimony was direct and clear as to the arrangement which existed between Benjamin Park and his son Mercur with regard to the homestead farm, including the timber lot in question, and what was done by the parties under that agreement. The principal witnesses called by the plaintiff to establish the agreement between himself and his father upon which he relied were his brother, W. D. Park, his sister, Mrs. E. L. Walker and his sister-in-law, Mrs. W. D. Park. These witnesses were not merely disinterested, for if they had any interest it was adverse to the right of the plaintiff. Mr. W. D. Park testified at considerable length, stating that Mercur Park, about the time he graduated from the commercial college at Elmira, had an offer of a position in New York at a good salary and he wished to take it, that his father insisted upon his declining the position and going to live on the farm and work and handle it, that his father stated that he and his wife were getting old and could not take care of

themselves and he had to get somebody to take care of them and look after the farm; that, at that time, he heard his father say to Mercur: "You know this is your's, and we intend you shall have it and you shall have it; all the land we have got in Litchfield;" that his father "mentioned this timber lot in particular, that that should be his (Mercur's), that much more than they were going to give to any of the other children; because they expected my brother Mercur to take care of them, and they would be more or less trouble to him and he would have a great deal of care and responsibility, and by their living at home that they would have their living at home; that they would have their living and everything from the farm and they wanted him to look after them and take care of them, and consequently they gave him this timber lot and told him it should be his, and it was his and he had it at that time to use it." He testified that Mercur agreed to accept this arrangement proposed by his father, declined to accept the situation in New York and went to the farm and lived with his father and mother, taking possession of and absolute control and dominion over the farm, including the timber tract in question; and that Mercur Park had performed his part of the contract faithfully, and had continued in possession of the farm and timber lot, living in the mansion house with his father and mother until the date of his marriage, after which he with his wife lived in another house on the farm; the father and mother continuing to occupy the mansion house until the death of the mother, in 1903, when Mercur and his wife moved into the mansion house and there lived with his father until the death of the latter, in March, 1905, at a very advanced age. This witness further testified that the plaintiff at once took possession of the farm under the agreement between him and his father and that the plaintiff had from time to time made valuable improvements upon the premises, raising the barns and placing walls under them, thus making two basement stables for horses and cattle; that he had very much enlarged one of the barns, that he had built an ice house and creamery and a very good silo, that he had put new roofs on the buildings, built new fences and put the farm into good condition. This witness further testified,

that after the arrangement had been made and Mercur had gone into possession of the farm thereunder he had heard his father, Benjamin Park, say in the presence of Mercur, his mother and the wife of the witness, that he, Benjamin Park, had made a will and had "willed his farms around to all of his children just as he wanted them to have them, and that he had given Mercur this farm to do with and handle as his own, . . . . and Mercur could do with the same as he saw fit; he could improve it and slick it up as much as he had a mind to, and put up as good buildings as he wanted to, and shingle the barns or tear them down, or destroy anything that he had a mind to, only so that he did not interfere with him while he was living there; he had his home and rights there as long as he lived, but Mercur could use the farm as his own." This testimony was corroborated by that of his wife, Mrs. W. D. Park, by that of Edith Park, Mrs. Mills, William Woodworth and his wife, Mrs. E. L. Walker (who was a sister of both plaintiff and defendant), and several other witnesses; nearly all of whom testified that Benjamin Park had specifically referred to the timber lot as embraced within the terms of the agreement between himself and his son, Mercur Park. Several witnesses testified that, after the arrangement between Benjamin Park and his son Mercur had been made and the latter had in pursuance thereof entered into possession of the farm, parties had attempted to negotiate with Benjamin Park for the purchase of the timber growing upon the lot in question and that he had repeatedly and expressly informed them that he did not own the timber tract, that it belonged to his son Mercur and they would have to deal with Mercur; and Mercur Park did actually, in 1893, enter into a written contract for the sale of all the oak timber standing upon the farm, including the timber tract in question, and the oak timber was under that contract cut off this lot and the parties settled with and paid Mercur Park for the same. It was established as conclusively as anything can be established by oral testimony that shortly after Mercur Park had taken possession of the farm and timber tract, Benjamin Park told those who assessed the land for purposes of taxation that he no longer owned the land, that it was owned by his son, Mercur Park, and

he directed them to assess the land accordingly. The land has since 1890 been continuously assessed in the name of Mercur Park. In addition to. this testimony, other witnesses were called who testified .to frequent conversations with Benjamin Park in which he admitted the contract between him and his son and that the son was in possession of all the land under that contract.

If the testimony is believed, the jury was fully warranted in finding that the contract between Benjamin Park and the plaintiff was established in all its terms. The parties were brought face to face, and the evidence disclosed a complete contract made by them. It also authorized the finding that the plaintiff had entered into possession of the land and per-formed his part of the agreement. It clearly appears, if the witnesses are credible, that Benjamin Park had frequently admitted making the contract with his son and that in pursu-ance thereof had made a will devising the land to the plaintiff. This testimony is supplemented by a paper in evidence, pur-porting to be the last will of Benjamin Park, dated September 3, 1889, in which he devises "to my son Mercur Park, subject to the dower interest of my wife therein, and also subject to the life estate of my wife in the dwelling house in which I now reside, all lands situate in the Town of Litchfield, Bradford County, State of Pennsylvania, of which I now own or shall die seized. I also give and bequeath to my said son all my stock and farm-ing utensils upon the same." This paper was in proper form as a testamentary disposition of property. The description of the land, viz.: "all lands situate in the Town of Litchfield, Bradford County, State of Pennsylvania, of which I now own," is the same as that used by the witnesses in their testimony as to what land Benjamin Park said was to pass under the agreement with his son Mercur, and there can be no question that it in-cludes the tract of land here in dispute. We do not agree with counsel for appellant in their contention that the estate in the land devised by that will is different from that provided for by the parol contract. The parties to the parol contract are pre-sumed to have known that Benjamin Park 'could not by will devise the land discharged of the interest of his wife therein,

in case she survived him.  They are presumed to have known that in case he had, at the time the parol agreement was made, executed a deed for the land in which his wife did not join, the wife would be entitled to dower in case she survived her husband.  The oral agreement to which the witnesses testified made express provision for the right of Benjamin Park and his wife to reside in the mansion house and have their living off the farm, so long as they survived.  This will, therefore, devised to Mercur Park precisely the same estate in the land, subject to the same charge, that he would have acquired if his father had, at the time the parol agreement was made, executed a deed embodying the terms of the parol agreement, in which deed the wife of Benjamin Park did not join.  The will is, therefore, in entire harmony with the parol contract.  This was accompanied by testimony, believed by the jury, that the will was made pursuant to and in conformity with the terms of the contract. This case bears a striking similarity to and is ruled by Shroyer v. Smith, 204 Pa. 310, in which Mr. Justice MESTREZAT used this language: "The will, therefore, became a writing embracing the terms of the agreement, and satisfied the statute of frauds: Brinker v. Brinker, 7 Pa. 53; Smith v. Tuit, 127 Pa. 341."

Evidence as to the declarations of Benjamin Park, made in the absence of Mercur Park fifteen years after the testimony established that the parol agreement had been made and executed by the entry of the plaintiff into possession of the land and a like period after Benjamin Park had executed his will in pursuance of the agreement, was properly excluded; McLaughlin v. McLaughlin, 91 Pa. 462; Parry v. Parry, 130 Pa. 94; Wilson v. Anderson, 186 Pa. 531; Baldwin v. Stier, 191 Pa. 432.

The judgment is affirmed.