# McGinley's Estate.

*Wills—Testamentary capacity—Hallucinations and delusions— Evidence—Contracts to make a will—Mutual wills—Consideration —Evidence—Sufficiency.*

1. In determining the right to an issue devisavit vel non the test is whether after a review of the whole testimony the trial judge would sustain a verdict against the will as being in accord with the manifest weight of the evidence.

2. At the hearing of a petition for an issue devisavit vel non where it was alleged that testatrix was subject to hallucinations and delusions at the time when she executed it, but where the subscribing witnesses, decedent's physician and an alderman of the ward who had transacted decedent's business for many years and another reputable witness testified that decedent's mental condition

was good at the time when she executed the will, and it further appeared that decedent had furnished the data to the scrivener who drew the will; that he had read the will to her; that her conversation was clear and natural; her hearing and sight good; and that she knew what she was doing, what property she possessed, and to whom her estate was to go, it was not error to refuse the issue, although there was some evidence that decedent had on several occasions in answer to greetings of friends on the street indicated a weak intellect and loss of memory.

3. Where in such case contestants alleged that decedent and her husband had made mutual wills whereby the property should ultimately pass to contestants in consideration of contestants' agreement to take care of decedent and her husband during their lives; that they had performed their part of the contract for a period of two years, until decedent's husband died; that decedent left them without cause, and died three weeks thereafter, having first made the will which was admitted to probate; and when contestants offered, in support of their contentions, evidence of declarations of decedent and her husband that they had mutually agreed to leave all their property to contestants if they would look after them during their lives, together with wills executed by decedent and her husband which bore earmarks of mutuality, in which the contestants were provided for after the death of decedent and her husband, an issue should have been granted to determine whether the agreement was made as alleged by contestants.

4. A person may enter into a valid contract to dispose by will of his property, real or personal, in a particular way and such will is irrevocable and the contract will be specifically enforced.

Argued Feb. 27, 1917. Appeal, No. 49, Jan. T., 1917, by Catherine T. Tracey and Rose M. Rehrer, from decree of O. C. Berks Co., File No. 75, dismissing appeal from decree of Register of Wills, admitting to probate the will of Susan McGinley, deceased, in Estate of Susan McGinley, deceased. Before BROWN, C. J., MESTREZAT, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Appeal from decree of register of wills admitting to probate the will of Susan McGinley, deceased. Before SCHAEFFER, P. J.

The opinion of the Supreme Court states the facts.

The court affirmed the decree of the register of wills. Catherine T. Tracey and Rose M. Rehrer appealed.

*Error assigned* was the decree of the court.

*Cyrus G. Derr,* with him *Walter B. Freed,* for appellants.—Where the owner of property makes a will in pursuance of an agreement founded upon a sufficient consideration that such will shall vest the property in another, such owners are thereby without capacity to make another will giving the same property to someone other than the party with whom such contract was made, and a testamentary paper made in violation of such contract must be regarded as null: Shroyer v. Smith, 204 Pa. 310; Johnson v. McCue, 34 Pa. 180; Taylor v. Mitchell, 87 Pa. 518; Lewallen's Est., 27 Pa. Superior Ct. 320.

The testimony submitted was sufficient to have warranted the jury in finding that Susan McGinley was not of a sound and disposing mind when she executed the paper which was admitted to probate: Adam's Est., 220 Pa. 531.

*Ira G. Kutz,* for appellees.—A court of equity will not enforce an agreement to make mutual wills.

There was not sufficient evidence to warrant a finding that testatrix was not of a sound and disposing mind, or that the will was the result of hallucinations and delusions: Landis v. Landis, 1 Grant (Pa.) 248; Grubbs v. McDonald, 91 Pa. 236; Allison's Est., 210 Pa. 22; Wilson v. Mitchell, 101 Pa. 495.

OPINION BY MR. JUSTICE MESTREZAT, April 16, 1917:

Catherine T. Tracey and Rose M. Rehrer, nieces of Susan McGinley, deceased, who survived her husband, Stephen McGinley, presented their petition to the Orphans' Court of Berks County averring, inter alia, that Stephen McGinley and Susan McGinley had in pursuance of a contract between themselves and the petitioners made mutual and reciprocal wills on May 22, 1914, in which they had devised their property to the petitioners in consideration that the latter would take care of them

during life; that the register of wills had admitted to
probate, against their objection, a paper writing pur-
porting to be the last will and testament of Susan Mc-
Ginley, dated April 6, 1915; that petitioners had filed
their appeal from the decision of the register admitting
the paper to probate; and prayed the court to award a
citation to the legatees named in the alleged will of April
6, 1915, to show cause why said will should not be ad-
judged void and why a precept should not be issued to
the Court of Common Pleas directing that an issue be
framed to determine whether Susan McGinley was the
victim of hallucinations and delusions, was of sound and
disposing mind, whether the execution of the will was
procured by fraud or undue influence, and "whether the
paper writing dated May 22, 1914, signed by the said
Susan McGinley, is such a mutual and reciprocal will
as to prevent the said Susan McGinley from revoking the
same after the death of the said Stephen McGinley." A
citation was awarded to which an answer was filed de-
nying the mental incapacity of Susan McGinley, that
she had hallucinations and delusions and that the will
was void, and also denying the alleged facts averred in
support of the allegation that the will was void. The
Orphans' Court refused an issue devisavit vel non, and
the contestants have appealed.

We have carefully examined the evidence and agree
with the learned judge of the court below that it is in-
sufficient to justify a verdict that, at the date of the will,
April 6, 1915, the decedent was of unsound mind or was
subject to hallucinations and delusions concerning the
contestants, or that the will was procured by fraud or
undue influence. In determining the right to an issue,
the test is whether, after a review of the whole testimony,
the trial judge would sustain a verdict against the will as
being in accord with the manifest weight of the evidence.
The subscribing witnesses, one of whom wrote the will,
the physician of the decedent, the alderman of the ward
who had transacted her business for years and another

reputable witness testified that her mental condition was good at the time she executed the will. It appears from this testimony that the decedent furnished the data to the scrivener for preparing the will, and he testified he read the will to her and her conversation was clear and natural, her hearing and sight were good, and she knew what she was doing, what property she possessed and to whom her estate was to go. The contestants introduced testimony to show that on one occasion the decedent had, in an excited manner, ordered the name of one of the contestants to be taken off the books of a trust company, and on several occasions had made remarks in answer to greetings of friends on the street which indicated a weak intellect and a loss of memory. Several other incidents were shown which are of little or no weight in establishing mental infirmity in the decedent. A jury would not be permitted to find mental incompetency or undue influence from such testimony, and the court was right in refusing the issue for such reason.

We cannot assent to the learned judge's conclusion that the oral evidence submitted in conjunction with the wills of May 22, 1914, was insufficient to justify the court in granting an issue to determine whether the parties entered into the agreement as alleged by the contestants. This, as will be observed, was one of the questions which was raised by the pleadings and was considered by the court in determining whether an issue should be sent to the Common Pleas. Susan McGinley, the decedent, and Stephen McGinley, her husband, each made a will on May 22, 1914, by which they gave all their property, after the death of the survivor of them, to Mrs. McGinley's two nieces, the contestants in this proceeding. These wills were written by the same scrivener, executed at the same time, witnessed by the same parties, and are identical in form and effect, the name of the principal beneficiary in each being the only difference. The contestants introduced evidence to show that the two wills

were executed, mutually and reciprocally, in pursuance of an agreement between the McGinleys and their nieces that, if the latter continued, as formerly, to care for their uncle and aunt as long as both lived, they were to have all the property of the McGinleys after the death of the survivor, and that the nieces performed their part of the contract, having taken care of Stephen McGinley until his death on September 9, 1914, and of Susan McGinley until within three weeks of her death, when she left the home of the nieces without cause and without their consent or agreement. It is, therefore, claimed that Mrs. McGinley violated her contract with her husband and her nieces, and, after his death, attempted to revoke her will of May 22, 1914, by making another will on April 6, 1915, the subject of this contest, by which she excluded her nieces and gave to strangers the estate which she owned in her own right and that which she received by her husband's will.

It is well settled that one may enter into a valid contract to dispose by will of his property, real or personal, in a particular way, and that such will is irrevocable and the contract will be specifically enforced. There are many examples of the recognition of this doctrine in this State and other states: Cawley's Est., 136 Pa. 628; Smith v. Tuit, 127 Pa. 341; Wright's Est., 155 Pa. 64; Shroyer v. Smith, 204 Pa. 310; Lewallen's Est., 27 Pa. Superior Ct. 320; Park v. Park, 39 Pa. Superior Ct. 212; Frazier et al. v. Patterson et al., 27 L. R. A. (N. S.) 508, and notes. In Thompson on Wills, Section 28, the learned author says: "Mutual wills, that is, where two persons execute wills reciprocal in their provisions, but separate instruments, may or may not be revocable at the pleasure of either party, according to the circumstances and understanding upon which they were executed. To deprive either party of the right to revoke such mutual wills, it is necessary to prove such wills were executed in pursuance of a contract or a compact between the parties and that each is the consideration for the other." When

such contract has been proved, the will becomes a writing containing the terms of the agreement, and satisfies the statute of frauds: Shroyer v. Smith, 204 Pa. 310.

We think the evidence submitted to and considered by the court was sufficient to send the case to a jury to determine the existence of the alleged contract between the McGinleys and the contestants, and whether the latter performed their part of the agreement. The court concedes that the wills of May 22, 1914, put in evidence, have the earmarks of mutual wills. The contestants introduced parol evidence in support of the contract. One of the witnesses was Fletcher E. Nyce, assistant treasurer of the Pennsylvania Trust Company of Reading and for many years the financial adviser of the McGinleys. He testified, inter alia, as follows: "About the middle of July, 1914, I was down to see Mr. and Mrs. McGinley; and at that time Mr. McGinley told me; he said, 'Mr. Nyce,' he said, 'Susan and I have agreed to make wills, and we went out to see Pat Breen, and we had him draw the wills.' He said, 'Mrs. Rehrer'—he called her Rosie— 'you go up and get them and let Mr. Nyce see them.' And Mrs. Rehrer went upstairs and in a little while she came down with the two papers. I looked at them and read them both, and I said, 'Well, Mr. McGinley, this is fine, this is fine.' He said, 'Yes, the girls have left their homes and came to us to take care of us; you see, there is Susan, she can't do anything, she is helpless, and I haven't been able to do anything for quite a long time, and Susan and I have agreed to give the girls everything that was left if they would stay with us and take care of us until we are gone; the girls have been kind to us.' And he said, 'Isn't that right, Susan?' And she said, 'Yes, papa, that's right;' she said, 'The girls are to have all, if only they will stay with us, and we promised them if they would stay with us we would give them all we had when we are gone.'" He further testified that Mrs. McGinley and Mrs. Rehrer were present during the conversation, and that the former repeated the words of her husband three

or four times.  Two or three days after Mr. McGinley's death, Mr. Nyce saw Mrs. McGinley again and she said: "Mr. Nyce, poor Steve, he couldn't last any longer.  Now, I am going to the hospital, and these girls will be here to have everything after my death."  He identified the wills of May 22, 1914, as the two papers shown him on the occasion of his visit to the McGinleys in July, 1914.  The McGinleys owned property of the value of about four thousand dollars, and were childless.  In the later years of their lives Mr. McGinley was afflicted with cancer of the face and Mrs. McGinley suffered a paralytic stroke. It appears that Mrs. McGinley went to a hospital in September, 1914, and returned to her nieces early in October and remained there until the following April when she went to reside with Mr. and Mrs. Babb to whom she devised the greater part of her estate by the will of April, 1915.  The contestants offered proof that they performed their part of the contract by taking care of Mr. McGinley until his death in September, 1914, and of Mrs. McGinley until she left them, without any reason or cause, about three weeks prior to her death.

This and other testimony and circumstances in the case tend, as the contestants claim, to show the existence of the alleged contract and that the wills of 1914 were made by the McGinleys to carry into effect the agreement made between them and their nieces.  Nyce's testimony, if believed, shows, not a promise by the McGinleys to make wills in the future but that "Susan and I have agreed to make wills and we went out to see Pat Breen and we had him draw the wills."  The wills were produced and Mr. Nyce read them.  Mr. McGinley repeated the contract which had been made and gave the reasons for making it, saying: "The girls have left their homes and came to us to take care of us; you see, there is Susan, she can't do anything, she is helpless, and I haven't been able to do anything for quite a long time, and Susan and I have agreed to give the girls everything that was left if they would stay with us and take care

of us until we are gone; the girls have been kind to us."
This statement by McGinley would justify the jury in
finding that the nieces had agreed to the terms of the
contract and had then left their homes and were perform-
ing their part of it. The conversation was in the pres-
ence of Mrs. McGinley who consented to what was said
by her husband and repeated the terms of the contract
three or four times. Mrs. Rehrer, one of the nieces, was
also present at this interview, acquiesced in the contract
as stated by the McGinleys, and, at Mr. McGinley's sug-
gestion, went upstairs and got the wills for Mr. Nyce,
showing that she knew of the wills and had them in her
possession or knew where they were kept. Mrs. McGin-
ley, after the death of her husband, confirmed the exist-
ence and terms of the contract by admitting, shortly
before her death, that the nieces would have everything
after she was dead.

This proceeding was conducted by the parties, and the
question as to the validity of the alleged contract was de-
termined by the court below on the theory that the con-
tract, if valid, could be set up to defeat the probate of
the will of 1915. In conformity with our practice, we
have disposed of the appeal in like manner, and, hence,
it is sufficient to say that we think the evidence justifies
awarding an issue to determine whether an irrevocable
contract was made between the parties as alleged by the
contestants. The competency of the witnesses and of the
testimony offered in the court below is not raised upon
this record, and we express no opinion in regard to it,
whether on the application for or on the trial of the issue.

For the reasons stated, the decree is reversed and an
issue is awarded.