## Craig's Estate.

236

Argued October 8, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Edwin W. Smith,* of *Reed, Smith, Shaw & McClay,* with him *L. F. J. Hepburn* and *W. R. McCommon,* for appellant.—The agreement was legal: Miller v. Miller, 284 Pa. 414; Muhr's Est., 59 Pa. Superior Ct. 393; Henkel's Est., 13 Pa. Superior Ct. 337; Dennison v. Goehring, 7 Pa. 175; Fishblate v. Fishblate, 238 Pa. 450; Rynd v. Baker, 193 Pa. 486.

An agreement to make a will and devise property in a fixed way, is binding and irrevocable where supported

by a proper consideration: Shroyer v. Smith, 204 Pa. 310; Smith v. Tuit, 127 Pa. 341; McGinley's Est., 257 Pa. 478; Lewallen's Est., 27 Pa. Superior Ct. 320.

*Edmund W. Arthur,* for appellee, cited: Shannon's Est., 289 Pa. 280; Miller v. Miller, 284 Pa. 414; Mathiot's Est., 243 Pa. 375.

*Wallis Giffen,* with him *Richard W. Ahlers,* for residuary legatees, appellees.—Promises to provide by will, which are indefinite or lacking in consideration are void and unenforceable: Caldwell v. Taylor, 276 Pa. 398; Wright's Est., 155 Pa. 64; King's Est., 150 Pa. 143; McClure v. McClure, 1 Pa. 374; Martin's Est., 131 Pa. 638.

A consideration of natural love and affection will not support an executory contract to provide for a son by will: Kennedy v. Ware, 1 Pa. 445; McClure v. McClure, 1 Pa. 374; Martin's Est., 131 Pa. 638.

A contract to provide by will must be supported by a valuable consideration: King's Est., 150 Pa. 143.

Strict proof of an alleged testamentary contract is required where the parties are related and the alleged promisor is dead: Caldwell v. Taylor, 276 Pa. 398; Conkel v. Byers, 282 Pa. 375.

Consideration for an undertaking to obtain a divorce is illegal and void, such agreements being against public policy: Shannon's Est., 289 Pa. 280.

A testamentary contract founded on an invalid consideration is unenforceable: Kesler's Est., 143 Pa. 386.

OPINION BY MR. JUSTICE SIMPSON, November 25, 1929:

At the audit of the executor's account in this estate, appellant, who is a son of testator, claimed to be given a child's share therein, or, if this was not allowed, then to have awarded to him the sum of $5,000 with interest, it being the amount of a promissory note of testator's, delivered to a trustee for appellant, the giving up of a

claim upon which note he alleged, and appellees denied, was intended to be the consideration for making a will in his favor. The auditing judge advised the allowance to him of a share in the estate. The court in banc (the auditing judge having died meanwhile) sustained exceptions to the adjudication, rejected both claims and decreed distribution of the estate among those named in testator's will. This gave appellant nothing, and he now appeals.

Testator and appellant's mother were married January 25, 1900, and appellant was born June 16, 1901. Probably as a result of the wife threatening proceedings for divorce, she and testator entered into a written agreement dated January 30, 1902. It recited that he had deserted her "without reasonable cause and it has been deemed advisable........to enter into an amicable agreement for the actual support and maintenance" of the wife and appellant (the latter being irrevocably committed to her care during minority), testator depositing with a named trustee certain securities and a promissory note for $5,000, the income thereon to be collected by the trustee, and, to the extent of $125 per month, paid to the wife for the support and maintenance of her and appellant, and for the education of the latter, testator agreeing to make good any deficiency in said sum —the securities themselves, but not the note, to be delivered to the wife if within three years she obtained a divorce on the ground of desertion, and, if she did not, then the securities and the note were to be returned to testator. It was further agreed that if a divorce was granted, the interest on the note, and so much of the principal as testator deemed necessary, should thereafter be paid to the wife "for the support, maintenance and education [of appellant] until he arrives at the age of twenty-three years, when [the principal] shall be paid over to him......absolutely." If he did not reach that age the note was to belong to the wife, and, if nei-

ther survived until then, it was to be returned to testator.

By a supplemental agreement, made by testator and his wife before they were divorced, he directed that the securities should be and they then were handed over to her absolutely. In it nothing was said about the $5,000 note; but on September 6, 1904, another paper, signed by testator only, directed the trustee to deliver it to the mother, and this was done. The order is not perspicuously worded, but her receipt expressly declares that it was "to be used for the support, maintenance and education" of appellant. As a minor contention, appellees say that this constituted an absolute gift of the note to the mother. This we think is erroneous. No attempt was made to give it outright to the mother, she never claimed it as her own, and testator never alleged it was hers. On the contrary, for nearly eighteen years thereafter, he paid interest on the note, exactly as he had done before, the only difference being that during this time he, personally or through his bank, paid it directly to the mother, instead of sending it to the trustee, who forwarded it to her, as had been the previous practice.

The main question growing out of these papers is whether or not the whole transaction, including the giving of the note, was void as against public policy, because it was a bargain regarding the institution and prosecution of a suit for divorce? The auditing judge decided it was not; the court in banc hinted otherwise, but did not rule the point. It is not necessary to consider the question at length. The agreement contained two separate and distinct matters, with separate and distinct considerations supporting them, though they were embodied in a single paper. The one attacked by appellees provided for the deposit and subsequent gift of the securities to the wife, the consideration for it being, as they allege, an illegal agreement to institute and prosecute the suit for divorce; the other was the note given to secure the maintenance and education of appel-

lant, and it is supported by the consideration of testator's legal obligation so to do, from the time of the making of the agreement, when appellant was but seven and a half months old, until he reached his majority. It is of no consequence that the two were embodied in one document (13 C. J. 562); they were readily severable and must be so considered: 13 C. J. 561; Perkins v. Hart, 11 Wheaton 237, 251; Wolf v. Welton, 30 Pa. 202. For nearly seventeen years after the divorce was granted and the mother had received the securities absolutely, testator recognized the continuing validity of the note by monthly paying interest on it, in compliance with its terms and his legal duty. Had he refused to do so, he could probably have been compelled to pay more for the support and education of appellant, than the $240 interest he paid annually. His monthly payments were monthly recognitions of the validity of the note, after that which it is said offended against public policy had come to an end. He never repudiated it, and appellees, who are mere volunteers, cannot now do so. The decision in Shannon's Estate, 289 Pa. 280, upon which they rely as establishing a different conclusion from that above expressed, was planted squarely upon the ground that the contract there being considered was an indivisible one.

There is no evidence in the case that testator ever paid anything on the principal of the note, or ever asked that it be returned to him, or that any part of the principal was directed to be or was in fact used for appellant's maintenance or education. Any deficiency between the cost thereof and the annual interest of $240 received from testator, was apparently paid by the mother. Consequently, unless there is something else in the case than that to which we have adverted, appellant, being now over 23 years of age, has a claim against testator's estate for the entire $5,000 and the unpaid interest thereon.

He contends, however, that there is something more. As nearly as one can tersely state his claim, it is that

testator, on or about January 6, 1919, agreed to give appellant a child's share in the estate, in lieu of liability on the note. In an attempt to sustain this contention, a number of letters written by testator, some to appellant and some to the mother, were offered in evidence, and she was called as a witness, but the proof falls far short of measuring up to the standard required in this class of cases. There is no doubt that such a contract is valid and binding if it is based upon a sufficient consideration and is duly proved (Cridge's Est., 289 Pa. 331), but the proof thereof must be direct and positive, and its terms must be definite and certain: Wall's App., 111 Pa. 460; King's Est., 150 Pa. 143; Breniman v. Breniman, 281 Pa. 304; Glass v. Tremellen, 294 Pa. 436, 438. The mere fact of a promise to make a will in appellant's favor would not be sufficient; it would have to appear that testator also expressly agreed not to revoke it, or that the character of the transaction was such that an agreement to that effect must necessarily be implied therefrom. The record in this case fails to disclose any such evidence.

It would unduly lengthen this opinion to review in detail all of testator's letters offered to support appellant's claim. We will consider, however, the one upon which appellant now alleges his claim is founded, and the testimony which relates to it, premising that its meaning is quite obscure owing to the fact that we have not the letter in reply to which it was written. Appellant does not allege that the supposed agreement relied on to sustain his claim arose at any other time, or in any other way, and hence as to the other letters in evidence, it is enough to say that, while there is in some of them sufficient to enable us to conclude that testator at one time had made a will in appellant's favor, and in others that he intended doing so, there is nothing to show, either clearly or otherwise, that he was under an obligation to give appellant a child's share in his estate.

242

The basic letter referred to is addressed to appellant's mother and is dated January 6, 1919. In it testator said: "In the first place there is no '$5,000 of Gordon's' as that was done away with when I made him one of my heirs on the same basis as the other boys...... It would be very unfair to him to cut his interest down to the $5,000...... See your honest lawyer Hepburn and ask his advice in regard to the matter and tell him the circumstances fully." The mother testified that on the receipt of this letter she did see her lawyer, that they "discussed about the note, and as Mr. Craig [testator] had written saying there was no note, I asked Mr. Hepburn what he would advise me to do, and he advised me to drop it and accept Mr. Craig's proposition, which I did." Appellant, who was then seventeen years of age, was present and assented to what the lawyer said. The mother says she communicated to testator her assent to what the lawyer advised, but, so far as appears, testator never replied to that communication.

In this same connection the mother further testified as follows: "Q. When was this first suggestion, or agreement or promise on his [testator's] part made that he would make a will including your son with the others in lieu of the note? A. Why that was about 1918 or 1919. Q. Then during this period from 1902 to 1918 or 1919, there was nothing said about that? A. No. Q. Then this promise which you allege or suggestion that he would include Gordon as a beneficiary in the will in lieu of the note, that was not made until 1918 or 1919, is that right? A. I accepted it as such in 1919." This alleged "suggestion or agreement or promise" evidently referred to what appeared in testator's letter of January 6, 1919, above quoted, and the witness was, therefore, giving but an opinion as to the meaning of the letter, which will not bear the construction placed by her upon it.

How the "$5,000 of Gordon's......was done away with" does not appear, except as may be inferred from

the testimony quoted, which does not show positively, definitely and certainly, that testator's making appellant "one of my heirs on the same basis as the other boys" was the result of an irrevocable agreement that it should continue so. The lawyer's advice "to drop it," to which the mother said she assented, could not have meant, as now claimed, that she or appellant was to give up all claim on the $5,000 note, even if, with appellant's immature assent, she had authority so to do, since at that time, and for more than four years thereafter, testator was paying interest on it to her, for appellant's support and education, and for nearly seven years thereafter the two were corresponding in regard to appellant having a share in testator's estate. In the letter immediately preceding the one we are considering, testator had written her: "You probably know that were I to die to day Gordon [appellant] would share equally with my other boys and get more than under the arrangement we first had—of course you can see I could not keep both of them in force as I supposed you understood, as it would give him a larger share in my estate than the others and I wish to be fair to all." Both of these letters refer to an existing will, not one yet to be made, and neither expresses an agreement that that existing will is not to be revoked.

A very careful consideration of all the evidence leads us to the conclusion that probably there was an understanding that if testator gave appellant a child's share in the estate, the latter would not make claim on the $5,000 note; but it is clear there was no agreement, certainly none that was directly, positively, definitely and certainly proved, that testator agreed he would give to appellant such a share, in consideration of a surrender of all claim on the note; and neither appellant nor appellees even suggest that the latter agreed to abandon all claim on it in consideration of the possibility that he might be given such an interest.

It follows that the conclusions reached by the auditing judge and the court in banc are alike erroneous; that the liability on the note itself still remains, and, since it is admitted the statute of limitations does not bar a recovery on it, we can, under the authority of section 2 of the Act of May 20, 1891, P. L. 101, and section 22(b) of the Orphans' Court Act of June 7, 1917, P. L. 363, 384, now allow it as a claim against the estate, as was the alternative contention at the audit.

The decree of the court below is reversed and the record is remitted with a direction to award to appellant the sum of $5,000 with interest, the costs of this appeal to be paid by testator's estate.