## Liggins Estate.

Argued March 21, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*John M. Bennett,* with him *James W. Mack,* and *Weimer, Bennett & Jones,* for appellant.

*David C. Wolfe,* with him *J. Murray Buterbaugh,* and *Spence, Custer, Saylor, and Wolfe,* for appellee.

OPINION BY MR. JUSTICE BELL, June 30, 1958:

Harry L. Oldham who resides at 1346 Solomon Street, Johnstown, Pa., is the son-in-law of the decedent, William Liggins. Oldham filed a petition against Constance Liggins (daughter and) devisee under William Liggins' last will and Constance Liggins, Administratrix c.t.a., for specific performance of an agreement between Liggins and Oldham and Margaret Oldham, his deceased wife, who was the daughter of Liggins, and praying for the conveyance to him of a one-half interest in premises 1346 Solomon Street, pursuant to an agreement made between Liggins and Mr. and Mrs. Oldham.

Mr. and Mrs. Oldham were the owners of premises 1346 Solomon Street. Mr. Liggins was living with them. He had no work and was despondent, and in order to give him an interest in life they orally agreed to convey to him a one-half interest in this property which was an apartment house, provided that they would all make reciprocal wills devising the real estate to the survivors. This agreement they faithfully carried out.

The agreement was proved by Mr. D. L. Zook, who is an attorney in Johnstown,* Pa.

Zook repeated over and over again that the deed for a one-half interest in the Solomon Street property and the reciprocal wills were prepared by him and were executed by the respective parties pursuant to the above mentioned oral agreement, namely, that Mr. and Mrs. Oldham would convey to Mr. Liggins a one-half interest in the Solomon Street property, in return for which each of them would execute reciprocal wills leaving their respective interests in the property to the survivors. The deed and the reciprocal wills were executed on May 4, 1951. In spite of a piercing and clever cross-examination Zook's testimony was clear, definite, precise, unshaken and very convincing. The deed and the reciprocal wills were witnessed by Zook and his secretary.

Liggins' will pertinently provided: "SECOND:—I give and devise any and all interests in real estate which I may own at the time of my death to Mrs. Margaret Liggins Oldham, my daughter, and to Harry L. Oldham, Sr., my son-in-law; their heirs and assigns for-

---

* At the time of the trial some six years later Zook was employed as a corporation counsel in Greensburg, Pa.; and would not benefit irrespective of whether the agreement was or was not sustained.

ever." The will of Margaret Liggins Oldham and of Harry L. Oldham* contained a similar reciprocal provision.

The applicable law is clearly set forth in *McGinley's Estate*, 257 Pa. 478, 101 A. 807. Two nieces claimed that their aunt and uncle agreed to leave everything to them if they would stay and take care of them. This oral agreement was proved by Mr. Nyce, an assistant director of the Pennsylvania Trust Company, to whom the McGinleys admitted their contract. Mr. McGinley died and thereafter Mrs. McGinley went to live with Mr. and Mrs. Babb, to whom she left the greater part of her estate by will. The Court said (page 483) :

"It is well settled that one may enter into a valid contract to dispose by will of his property, real or personal, in a particular way, and that *such will is irrevocable and the contract will be specifically enforced.*** There are many examples of the recognition of this doctrine in this State and other states: Cawley's Est., 136 Pa. 628; Smith v. Tuit, 127 Pa. 341; Wright's Est., 155 Pa. 64; Shroyer v. Smith, 204 Pa. 310; Lewallen's Est., 27 Pa. Superior Ct. 320; Park v. Park, 39 Pa. Superior Ct. 212; Frazier et al. v. Patterson et al., 27 L.R.A. (N.S.) 508, and notes. In Thompson on Wills, Section 28, the learned author says: 'Mutual wills, that is, where two persons execute wills reciprocal in their provisions, but separate instruments, may or may not be revocable at the pleasure of either party, according to the circumstances and understanding upon which they were executed. To deprive either

---

* These original wills (of May 4, 1951) were later destroyed, as will hereinafter more fully appear, but a copy was identified by Zook and his secretary. The copy bore the pencil notation which was made by Zook's secretary: "final draft, exact copy, 5-4-51.", and was "used as a form or pattern in making up the new wills."

** Italics throughout, ours.

party of the right to revoke such mutual wills, it is necessary to prove such wills were executed in pursuance of a contract or a compact between the parties and that each is the consideration for the other.' When such contract has been proved, the will becomes a writing containing the terms of the agreement, and satisfies the statute of frauds: Shroyer v. Smith, 204 Pa. 310.''

In *Gredler Estate,* 361 Pa. 384, 65 A. 2d 404, an oral promise or agreement by husband and wife that the survivor would leave by will his (or her) estate, including real and personal estate, to Catholic Church or charities was held to be valid and enforceable. According to their attorney, they both told him that they wanted and had agreed '' ' '' that whatever we have left, our residuary estate after the payment of taxes and so forth, shall go to institutions operated by or having some connection with the Catholic Church.'' ' He suggested to them that it was not necessary at that time to draw wills, but instead, 'if that was their agreement that the property should go that way then they should agree right then and there that the survivor should make a will carrying out their joint wishes and they both said, ''well, that is what we will do'' and between themselves they said, ''well, whoever the survivor is, the survivor will make the will'' ' . . . . In 1938 Mr. Gredler died; he left no will, all the property held as tenants by the entireties passing to his widow by operation of law.'' In 1941 Mrs. Gredler executed a will in which she left legacies to Catholic institutions which were included in a list contained on a slip of paper which she told her attorney were ''the institutions and the places that Bill [her husband] wants to have the money . . . .'' In 1947 she made a new will in which she left her residuary estate to other institutions. This will was executed within 30 days of her death.

Neither the evidence nor the facts in that case, while very analogous, were nearly as strong for claimants as in the instant case. (a) There was no writing or will to evidence the oral agreement which was made in 1937; (b) Mrs. Gredler's 1941 will was not made until long after the oral agreement; (c) no reciprocal wills were made; (d) Mrs. Gredler's 1941 will was not made until after Gredler died; (e) Mrs. Gredler's will made no reference to any agreement with her husband; (f) Mrs. Gredler's 1947 will demonstrated, so her heirs contended, that there never had been the aforesaid oral agreement or that if there were, it had been terminated, and (g) the new beneficiaries named in her last will were admittedly not the same as she and her husband had selected. Nevertheless, the Court sustained the oral agreement and said (page 387) : "These mutual promises, made by the parties in the presence of a witness (cf. Moffitt v. Moffitt, 340 Pa. 107, 16 A. 2d 418), constituted an enforceable contract. It is well established that an agreement to make a will or to devise one's property to a particular person or for a particular purpose *is binding and irrevocable* when supported by what the law regards as valid consideration." See also: *McGinley's Estate,* 257 Pa. 478, 483, 101 A. 807, 808; *Cramer v. McKinney, Executors,* 355 Pa. 202, 204, 49 A. 2d 374, 375; *Craig's Estate,* 298 Pa. 235, 241, 148 A. 83, 85; *Culhane's Estate,* 133 Pa. Superior Ct. 339, 347, 348, 2 A. 2d 567, 571.

A claim based upon a contract made with a decedent to leave certain property by will, like any other claim made against a decedent's estate, must be proved (not by evidence which is indefinite, loose, or vague) but by evidence which is clear, precise and convincing, or as it is sometimes expressed, clear, direct and positive. *King Estate,* 387 Pa. 119, 123, 126 A. 2d 463; *Furjanick Estate,* 375 Pa. 484, 100 A. 2d 85; *Grossman Estate,*

386 Pa. 647, 126 A. 2d 468; *Stafford v. Read*, 363 Pa. 405, 70 A. 2d 345.

The testimony in support of the aforesaid oral agreement made by Mr. Liggins and Mr. and Mrs. Oldham, and the conveyance of a one-half interest in the Solomon Street property by the Oldhams to Liggins and the execution of reciprocal wills on May 4, 1951, leaving their interests in the Solomon Street property to the survivors pursuant to and in accordance with their aforesaid oral contract, was proved by evidence which was clear, direct, precise and convincing. Under the authorities hereinabove cited this constituted a valid irrevocable contract.

The hearing Judge found that reciprocal wills were signed by William Liggins, Harry L. Oldham and Margaret L. Oldham in the office of their attorney, David L. Zook, contemporaneously with the execution of a deed by the Oldhams to William Liggins for a one-half interest in their property at 1346 Solomon Street, Johnstown, Pa. However, the lower Court denied recovery for the following erroneous conclusions: *"In the similar wills there is no statement that these wills were to be irrevocable or that there was any contractual obligation. . . .* the Court finds that the proof is not direct, positive and definite, of the fact that there was a contract to make *irrevocable* mutual wills. . . . The Court finds as a fact that *no irrevocable* contract was made between Harry L. Oldham and William Liggins wherein either party was estopped from destroying his will.* CONCLUSIONS OF LAW. . . . 2. In the instant case there was no specific contract that the wills were *irrevocable."*

Sometime after Mrs. Oldham's death, Oldham and Liggins came into Zook's office in April, *1952,* and

---

* This was mistakenly termed a finding of fact when in reality it was a conclusion of law.

asked him to draw a new *reciprocal* will for each of them *pursuant to the agreement which they had made.* He prepared such wills *in pursuance of the original agreement,* but unwisely destroyed, at his clients' directions, the original 1951 wills before the new wills were executed. Thereafter, Zook prepared, in April, 1952, mutual reciprocal* wills for Harry L. Oldham and William Liggins *in pursuance of their original contract.* Oldham's will was signed on April 28, 1952 but Liggins' will was not signed until August, 1952 because he wanted a change made in his burial arrangements and he and Zook were unable to previously arrange a mutually satisfactory time of meeting. Liggins, in this 1952 will, gave, devised and bequeathed all his residuary estate to his son-in-law, Harry L. Oldham, Sr., his heirs and assigns, provided he was living ninety days after Liggins' death or if he died prior thereto, to Liggins' relative, Mrs. Constance Kendrick, Leistershire, England, her heirs and assigns. Oldham's will had a reciprocal provision, and the two wills were identical as aforesaid.

Thereafter, Liggins made a new will dated May 20, 1953, in which he bequeathed and devised everything he possessed to his daughter, Constance Liggins. Hence this suit.

The question arises as to whether or not Liggins was completely released from his aforesaid *irrevocable* contract by the destruction of the 1951 wills and the execution by Liggins and by Oldham of their respective aforesaid 1952 wills. Whether the action of the parties in *1952* terminated the original agreement is a question of law. Zook testified that when Liggins and Oldham came to his office together to make their new

---

* Except for burial provisions, and of course except for naming the other as residuary legatee, they were actually identical.

wills in 1952 he explained to them, and they agreed, that these mutually reciprocal 1952 wills were made and executed *in pursuance of their original contract.* Furthermore, when Liggins returned in August of 1952 to sign his will, Zook again went over the original agreement with him because he was up in years and the time that had elapsed between the preparation and execution of the will. Zook reiterated the agreement under which the Solomon Street property had been transferred to Liggins in consideration of the making of reciprocal wills by Mr. Liggins and Mr. and Mrs. Oldham, and that the new wills were made after Margaret's death in pursuance of this, their original agreement. Liggins agreed with this statement and he then executed his will which was witnessed by Zook and his father. It was stipulated that Zook's father, who was living in Florida, would identify his signature to Liggins' 1952 will.

The hearing Judge held, we repeat, (1) that the parties did not state that their oral agreement was irrevocable; and (2) that the original reciprocal wills of 1951 did not refer to the oral agreement or state that they were irrevocable; and (3) that the original oral agreement was undoubtedly terminated by the destruction in 1952 of the original wills of 1951.

Appellees contend that findings of fact made by a chancellor cannot be overruled by us if they are supported by adequate testimony, and there is no manifest abuse of discretion or error of law. This is an accurate statement of the law, but it does not aid appellees because the chancellor's conclusions were based upon a misconception of the law. The principles which are applicable in the instant case are set forth with more particularity in *Eways v. Reading Parking Authority,* 385 Pa. 592, 601, 124 A. 2d 92:

" 'Findings of fact made by a Chancellor who saw and heard the witnesses, when confirmed by the Court en banc, will not be reversed on appeal if they are supported by adequate evidence: Pregrad v. Pregrad, 367 Pa. 177, 80 A. 2d 58; Barrett v. Heiner, 367 Pa. 510, 80 A. 2d 729. However, that well-settled principle is confined to findings which are . . . genuine findings of fact. "With respect to [a] inferences and deductions from facts and [b] conclusions of law, both the Court en banc and the appellate Courts have the power to draw their own inferences and make their own deductions and conclusions: Barrett v. Heiner, 367 Pa. 510, 80 A. 2d 729; Noonan Estate, 361 Pa. 26, 63 A. 2d 80; Payne v. Winters, 366 Pa. 299, 77 A. 2d 407; Smith v. Smith, 364 Pa. 1, 70 A. 2d 630.": Kalyvas v. Kalyvas, 371 Pa. 371, 375-376, 89 A. 2d 819.' "

The chancellor was mistaken in his conclusions of law and in the inferences and deductions he drew from the facts. He erroneously believed that a contract to leave certain property to the survivors by mutual or reciprocal wills was irrevocable *only* *if* the parties specifically agreed that the contract was irrevocable, or if the wills themselves recited that they were irrevocable, or were made pursuant to an irrevocable contract. It is clear from the authorities hereinabove set forth that this is not the law.

We are convinced (1) that Mr. Liggins and Mr. and Mrs. Oldham entered into an oral contract in 1951 under the terms of which the Oldhams agreed to convey to Liggins a one-half interest in their apartment house known as premises 1346 Solomon Street, Johnstown, Pa., on the condition that Mr. Liggins and Mr. and Mrs. Oldham would make reciprocal wills leaving their interest in this property at his or her death to the survivors; (2) that in pursuance of and in compliance with

this agreement, Mr. and Mrs. Oldham conveyed their undivided one-half interest in said property to Mr. Liggins and simultaneously therewith, all three executed in May, 1951 reciprocal wills which specifically carried out this contract; (3) that such a contract was valid and irrevocable, unless thereafter terminated or modified by mutual agreement; (4) that the destruction of Liggins' will and of Oldham's will after Mrs. Oldham's death, and the execution thereafter (in 1952) of reciprocal and identical wills by Mr. Liggins and Mr. Oldham, leaving the property in question to the survivor, or in the event of his death within 90 days to (Liggins' relative) Constance Kendrick, was not a termination of the original contract, but was intended by the parties and was in legal effect a continuance and substantial compliance and performance thereof; and (5) that Liggins' last will dated May 20, 1953, in which he bequeathed and devised his entire estate to his daughter Constance constituted an unlawful breach of his aforesaid irrevocable contract.

The decree of the Court below is reversed and the case is remanded to that Court with directions to enter a decree in accordance with this opinion. Costs shall be paid by the Estate of William Liggins.