## Pinney Estate.

Argued April 25, 1963. Before BELL, C.J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Guy W. Davis,* with him *John Y. Mace* and *Edward Harshaw,* for appellants.

*George E. Kearns, Jr.,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 5, 1963:

On March 9, 1960—survived by neither spouse nor issue—Elizabeth A. Pinney (decedent) a resident of Delaware County, died.

On October 11, 1955, decedent—then 85 or 86 years of age—entered into a written agreement[1] with a Mrs. Hazel Liddell (Mrs. Liddell) which agreement read as follows: "I, [decedent], have requested [Mrs. Liddell], my husband's cousin, to live with me, so that when and if I become infirm or helpless, she shall give me the loving care of a sister in Christ, for the balance of my days. Since she is the closest relative of my husband and myself (in this country), and the loved one who will best minister to my needs, it is my desire now, and was my husband's and my desire before he went home, that she receive my property at 115 Barker Ave Sharon Hill.

"I, [Mrs. Liddell], agree to accede to [decedent's] request and will take up my residence with her at 115 Barker Ave. I further agree to share in the expenses of the house to the amount of thirty dollars per month at present; but will continue my present career in nursing as long as [decedent] has a suitable companion living with her. Should she be left alone, or need care for any reason, I agree to tend her as a loving sister in Christ for the balance of her life."

On January 25, 1960, decedent made a will in which she created a trust consisting of her entire estate. Under the terms of that trust, the trustees were "to use the income for the benefit of . . . [Mrs. Liddell], for and during the term of her natural life"; if the trustees so determined, they could sell the realty, invest the principal and use the income for Mrs. Liddell's benefit; if deemed necessary by the trustees, they could use any part of the principal for Mrs. Liddell's benefit; upon Mrs. Liddell's death, the trustees were di-

---

[1] The execution of this agreement by both parties, the mental competency and understanding of decedent at the time and the fact that the agreement was duly witnessed—by those individuals who now in their fiduciary capacities oppose the claim based on this agreement—are admitted of record.

rected to "use the principal or the balance thereof in the Lord's Work in any way that they shall choose."

Sometime subsequent to October 11, 1955—the date of the agreement—Mrs. Liddell did go to live with the decedent and she remained there not only until decedent's death but until her own death on December 30, 1961.

After the death of Mrs. Liddell, decedent's trustees filed their first and final account[2] in the Orphans' Court of Delaware County and requested that court to distribute the balance in the account in accordance with the provisions of decedent's testamentary trust.[3] At audit, Mrs. Liddell's personal representative claimed the balance of the proceeds of the sale of the realty on the basis of the 1955 agreement and, after hearing, the court directed distribution of such balance to the estate of Mrs. Liddell. From that decree this appeal is taken.

Certain well settled legal principles are presently applicable: (1) an agreement to devise one's property to a particular person is binding and irrevocable when supported by what the law regards as valid consideration (*Liggins Estate,* 393 Pa. 500, 505, 143 A. 2d 349); (2) the consideration is provable by parol evidence (*Herr Estate,* 400 Pa. 90, 94, 161 A. 2d 32); (3) in interpreting such an agreement, the court can always consider the surrounding circumstances in order to ascertain the intent and meaning of the parties (*Herr Estate,* supra, pp. 93, 94); (4) a written agreement which purports to leave at one's death, or to give by will, a particular piece of real estate complies with and

---

[2] This account indicated that, after Mrs. Liddell's death, the property at 115 Barker Ave. had been sold and that the proceeds from such sale amounted to $9,856.85.

[3] Specifically, two-thirds to Community Gospel Chapel, Parkside, Pa., and one-third to Gospel Home for Aged Christians, Longport, New Jersey.

satisfies the Statute of Frauds (*Herr Estate,* supra, 96 and cases therein cited).

A study and examination of the 1955 written agreement clearly indicates that decedent required of Mrs. Liddell (a) that she live with her, (b) that, if decedent became "infirm or helpless", Mrs. Liddell would care for her and (c) that Mrs. Liddell would share to the extent of $30 monthly the expenses of the household.[4] On her part, Mrs. Liddell agreed (a) to share the household expenses to the extent of $30 monthly and (b) to "tend" the decedent if she "be left alone or need care for any reason", but she expressly reserved the right to continue in her nursing profession so long as decedent had a "suitable companion". In return for the performance of her engagements, Mrs. Liddell was to receive the specified property.

Decedent's trustees contend: (a) that, by reason of the failure of Mrs. Liddell, subsequent to decedent's death, to take steps to enforce the 1955 agreement, she acquiesced in the terms of the will and such acquiescence created a supersession of the 1955 agreement by the will; (b) that the 1955 agreement was not a contract to give this property to Mrs. Liddell; (c) that, by her conduct after decedent's death, Mrs. Liddell placed a construction on the meaning of the 1955 agreement contrary to that found by the court.

Neither the factual situation nor the law applicable thereto supports any of the contentions of decedent's trustees. The 1955 agreement constituted a valid and enforceable contract between the parties and the record, *positively, clearly* and *convincingly,* shows

---

[4] The record shows that from January 1956 until decedent's death, Mrs. Liddell regularly paid $30 each month to decedent. Even after decedent's death, Mrs. Liddell paid in excess of $1900 toward the taxes, including inheritance tax of $500, on the property as well as the expenses of maintenance and repair of the property.

that Mrs. Liddell substantially performed all her engagements under such agreement and gave full and adequate consideration within the meaning and intent of the parties.

In our view, the court below properly directed distribution of the balance of the proceeds of the sale of the realty shown by the account to the personal representative of Mrs. Liddell's estate in accordance with the terms of the agreement rather than in accordance with the terms of the will.

Decree affirmed. Each party to pay own costs.